Filed 6/6/11

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| In re V.V., a Person Coming Under the Juvenile Court Law. | ) ) ) | |
| | ) | |
| THE PEOPLE, | ) | S177654 |
| Plaintiff and Respondent, | ) ) | Ct.App. 2/1 |
| v. | ) | B212416 |
| | ) | |
| V.V., | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. GJ25585 |

| | | |
|---|---|---|
| In re J.H., a Person Coming Under the Juvenile Court Law. | ) ) ) | |
| | ) | |
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | S179579 |
| | ) | |
| v. | ) | Ct.App. 2/8 |
| | ) | B212635 |
| J.H., | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. GJ25587 |

In this case, V.V. and J.H., minors, set off a firecracker on a brush-covered hillside in Pasadena, causing a fire that burned five acres of forest land. At a combined adjudicatory hearing, the juvenile court determined that V.V. and J.H. had committed arson. The court found that, although they did not intend to set the hillside on fire, the evidence satisfied the mental state required for arson.

In V.V.'s case, the Court of Appeal affirmed the juvenile court's order, finding that the evidence sufficiently established the requisite mental state of malice because V.V. deliberately and intentionally set off a firecracker on a brush-covered hill. In J.H.'s case, a different division of the Court of Appeal found that the intentional act of setting off a firecracker on a brush-covered hill without intent to do harm is insufficient to establish the element of malice.

We conclude that under the circumstances of this case, V.V.'s and J.H.'s acts of intentionally igniting and throwing a firecracker amidst dry brush on a hillside, although done without intent to cause a fire or other harm, were sufficient to establish the requisite malice for arson.

## I. FACTS AND PROCEDURAL HISTORY

On the afternoon of July 18, 2008, V.V. and J.H. (both 17-year-olds) joined a friend to climb a steep hill located behind a residential street in Pasadena. V.V. lit a large firecracker, which J.H. threw onto the brush-covered hillside. The firecracker exploded and caused a five-acre brush fire.

Abel Ramirez, a Pasadena resident, heard a "very loud explosion" from his backyard patio. He immediately saw smoke rising from the hillside and saw flames several minutes later. Shortly thereafter, Ramirez saw three young men running down the hill from the fire's point of origin. The fire was rapidly spreading, coming within 60 to 75 feet of a residence. Ramirez called 911 to report the fire and described the three young men. At a field show-up that day and

at the adjudicatory hearing, Ramirez identified V.V. and J.H. as two of the three young men running down the hill.

Ara Moujoukian, Ramirez's neighbor, heard kids laughing, yelling, and "having a good time" outside his house. He heard them exclaiming "Wow," "Look," "Did you see that," and "Fire." Moujoukian went outside and saw three boys laughing and "high-fiving" each other. When Moujoukian asked, "What are you guys doing?" they immediately ran away. One of the three boys "smacked" Moujoukian's car as he ran off. Moujoukian turned around and saw a fire on the hill behind his house. He called 911 to report the fire and gave descriptions of the three boys. At a field show-up that day and at the adjudicatory hearing, Moujoukian identified V.V. and J.H. as two of the three boys.

Pasadena police officers responded to the 911 calls. About one-quarter mile from the scene of the fire, they saw three people matching the description of the suspects and detained them. Officer Brian Bozarth patted down V.V. and found a lighter and "a large firecracker that would be described as a cherry bomb," which was about the size of a golf ball and had a fuse coming out of the top. When Officer Bozarth discovered the firecracker, V.V. declared, "That's what caused the fire." V.V. admitted that he had caused the brush fire by setting off a firecracker on the hillside. Officer Bozarth saw a gray substance on J.H.'s fingers that appeared to be gunpowder from fireworks.

Firetrucks arrived and climbed three-fourths of the way up the hill. The fire burned five acres of brush-covered hillside behind a housing development.

At the police station, Detective Jesse Carrillo read V.V. and J.H. their *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436) and interviewed them separately. During the interviews, V.V. and J.H. admitted that they had been playing with firecrackers and had set the hillside on fire. They stated they had gone to the hill with the intention of climbing it. J.H. admitted that he had brought

3

six firecrackers "because we wanted to blow them up." V.V. and the third minor knew J.H. had the firecrackers with him. But the third minor did not want to participate in lighting the firecrackers because he feared that someone might get injured.

V.V. acknowledged that, although J.H. brought the firecrackers to the hill, they both had the idea of lighting one. The minors stated that J.H. held the firecracker, V.V. lit it with J.H.'s lighter, and J.H. threw it. V.V. stated that they tried to throw the firecracker onto a green area on the hillside. On the other hand, J.H. said he told V.V. he was going to throw the firecracker onto a concrete area. V.V. claimed that he lit the firecracker "[j]ust to make a lot of noise," and that he did not think the green areas on the hillside would ignite. After the fire started, they "got kind of scared" because the fire could have reached them. They then discarded the other fireworks into a sewer. The three minors ran down the hill without stopping to report the fire to anyone.

Detective Carrillo testified that the brush fire's point of origin was below the minors' position on the hillside. He stated that the concrete area J.H. said he was aiming for was even further down the hillside, about 150 yards from the fire's point of origin.

The Los Angeles County District Attorney filed petitions under Welfare and Institutions Code section 602 alleging that V.V. and J.H. committed the crimes of arson of a forest land (Pen. Code, § 451, subd. (c))[1] and recklessly causing a fire (§ 452, subd. (c)). The juvenile court found that V.V. and J.H. understood what they were doing and that they knew "the natural consequence could be setting the hill on fire because they're trying to throw the thing into a

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

4

patch of green or into a cement area. So they're trying to avoid setting the hill on fire." The court further found that V.V. and J.H. did not intend to set the hill on fire, but concluded that because they intentionally ignited and threw the firecracker that caused the fire, the requisite mental state for arson was met, as construed in *People v. Atkins* (2001) 25 Cal.4th 76 (*Atkins*). The court found the arson allegation to be true, dismissed the lesser offense of unlawfully causing a fire, declared V.V. and J.H. wards of the state, and placed them on home probation.

In affirming V.V.'s wardship order, Division One of the Court of Appeal, Second Appellate District, in an unpublished opinion, concluded that arson's malice requirement was met under *Atkins*. The court reasoned that "[u]ndisputed evidence established that V.V. intentionally ignited the firecracker with the knowledge and intent that his companion would throw the firecracker onto the hillside and it would explode amidst dry brush. This was not an accidental ignition, but a deliberate and intentional act of igniting and exploding the firecracker 'under such circumstances that the direct, natural, and highly probable consequences would be the burning of' dry brush on the hill when the firecracker exploded. (*People v. Atkins*, *supra*, 25 Cal.4th at p. 89.)"

In setting aside the arson finding in J.H.'s case, Division Eight of the Court of Appeal, Second Appellate District, in a published opinion, concluded that, under *Atkins*, the act of lighting and throwing a firecracker without the intent to do harm was not malicious conduct because it was not done with "an intent to do a wrongful act." The court struck the arson finding as to J.H. and modified the judgment to reflect a finding that J.H. committed the lesser offense of recklessly causing a fire.

5

We granted review in both cases to determine the correct application of *Atkins*.[2]

## II. DISCUSSION

V.V. and J.H. argue that there is insufficient evidence of malice, as defined in the arson statutes (§§ 450, 451), because they lit and threw the firecracker without intent to cause a fire or any other harm. As explained below, the evidence supports the juvenile court's finding that V.V. and J.H. acted with malice.

Our review of the minors' substantial evidence claim is governed by the same standard applicable to adult criminal cases. (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1328.) "In reviewing the sufficiency of the evidence, we must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v. Davis* (1995) 10 Cal.4th 463, 509.) " '[O]ur role on appeal is a limited one.' [Citation.] Under the substantial evidence rule, we must presume in support of the judgment the existence of every fact that the trier of fact could reasonably have deduced from the evidence. [Citation.] Thus, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 925, fn. 2.)

"A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." (§ 451.) "Willfully" is defined not in the arson chapter, but in section 7, item 1: "The word 'willfully,' when

---

[2] On the Attorney General's motion, we ordered the cases consolidated for purposes of briefing, oral argument, and decision.

6

applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to.  It does not require any intent to violate law, or to injure another, or to acquire any advantage."  The arson chapter defines "maliciously" as involving "a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law."  (§ 450, subd. (e).)  This is the same definition as found in section 7, item 4, except for the inclusion of "defraud" in section 450.

In *Atkins,* we held that arson requires only a general criminal intent and that the specific intent to set fire to, burn, or cause to be burned the relevant structure or forest land is not an element of arson.  In reaching that conclusion, we examined the statutory terms "willfully" and "maliciously," and explained: " '[T]he terms "willful" or "willfully," when applied in a penal statute, require only that the illegal act or omission occur "intentionally," without regard to motive or ignorance of the act's prohibited character.' [Citation.]  'Willfully implies no evil intent; " 'it implies that the person knows what he is doing, intends to do what he is doing and is a free agent.' [Citation.]" ' [Citations.]  The use of the word 'willfully' in a penal statute usually defines a general criminal intent, absent other statutory language that requires 'an intent to do a further act or achieve a further consequence.' [Citations.]" (*Atkins*, *supra*, 25 Cal.4th at p. 85.)  Similarly, the statutory definition of "maliciously," in the context of arson, requires no specific intent to do a further act or achieve a future consequence.  (*Id*. at pp. 85-86.)  Other language in the arson statute "does not require an additional specific intent to burn a 'structure, forest land, or property' . . . ." (*Id*. at p. 86.)

In *Atkins*, the defendant admitted that he poured a mixture of oil and gasoline on a pile of weeds and lit the weeds with a disposable lighter in a cleared area in a canyon that had heavy brush, trees, and grass.  He claimed that he had

been drinking most of that day. Although the prosecution presented evidence that he had previously threatened to burn down a nearby house, the defendant asserted that he meant no harm and that the resultant brush fire was an accident. (*Atkins*, *supra*, 25 Cal.4th at pp. 79-80.) We held that because arson is a general intent crime, evidence of voluntary intoxication was not admissible on the issue of whether the defendant formed the required mental state for arson. (*Id*. at pp. 79, 84.) We stated that the arson statute does not require the intent to cause the resulting harm, but "rather requires only [a general] intent to do the act that causes the harm." (*Id*. at p. 86.)

Here, the evidence shows that V.V. and J.H. willfully and intentionally ignited and threw a large firecracker onto the brush-covered hillside, that the firecracker exploded in the dry brush, and that the explosion caused a brush fire. Thus, the actus reus element of section 451 was met because V.V. and J.H. willfully and intentionally committed the act that "cause[d] to be burned . . . forest land." (§ 451.) However, V.V. and J.H. argue that their acts were not malicious. They agree that an intent to commit the resulting harm is not an element of arson, but argue there must be evidence they intended to cause a fire or some other harm or "evil result."

The statutory definition of arson is derived from the common law crime of arson as a willful and malicious burning. (*Atkins*, *supra*, 25 Cal.4th at pp. 86-87.) Although "[m]alice as universally understood by the popular mind has its foundation in ill-will" (*Davis v. Hearst* (1911) 160 Cal. 143, 157), it need not take the form of malevolence or ill will. (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against the Person, § 11, p. 213; Perkins & Boyce, Criminal Law (3d ed. 1982) Offenses Against Habitation and Occupancy, § 2, p. 275; see also *People v. Ah Toon* (1886) 68 Cal. 362, 363 [" 'malice, in common accept[ance], means ill-will against a person, but in its legal sense it means a

8

wrongful act, done intentionally, without just cause or excuse' "].)  Malice in fact — defined as "a wish to vex, annoy, or injure" (§ 7, item 4) — consists of actual ill will or intent to injure.  (See *Davis v. Hearst, supra*, 160 Cal. at pp. 157-158; 1 Witkin & Epstein, Cal. Criminal Law, *supra*, Crimes Against the Person, § 11, p. 213.)  However, " '[t]here is still another malice, the presumption of the existence of which is raised by the law in certain cases upon certain proofs.' " (*Davis v. Hearst, supra*, 160 Cal. at p. 158.)  This type of malice — malice in law — is defined in section 7, item 4 as "an intent to do a wrongful act, established either by proof or presumption of law."  (See *Davis v. Hearst, supra*, 160 Cal. at p. 158; see also § 450, subd. (e).)  Malice in law may be "presumed" or "implied" from the intentional doing of the act without justification or excuse or mitigating circumstances.  (See *Davis v. Hearst, supra*, 160 Cal. at p. 158; 1 Witkin & Epstein, Cal. Criminal Law, *supra*, Crimes Against the Person, § 11, p. 214.)

In determining whether the second type of malice ("intent to do a wrongful act") is established for arson, malice will be presumed or implied from the deliberate and intentional ignition or act of setting a fire without a legal justification, excuse, or claim of right.  (*Atkins*, *supra*, 25 Cal.4th at pp. 88-89; accord, *U.S. v. Doe* (9th Cir. 1998) 136 F.3d 631, 635 [common law arson]; cf. *People v. Hayes* (2004) 120 Cal.App.4th 796, 803, fn. 3 [malice will be presumed from types of injuries (maiming) resulting from intentional acts]; *People v. Nunes* (1920) 47 Cal.App. 346, 349 [same].)  " 'An intentional act creating an *obvious fire hazard* . . . done without justification . . . would certainly be malicious . . . .' " (*U.S. v. Doe, supra*, 136 F.3d at p. 635, fn. 4, italics added.)

As we stated in *Atkins,* arson's "willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire; ' "in short, a fire of incendiary origin." ' (*People v. Green* [(1983) 146 Cal.App.3d 369,] 379;

9

*People v. Andrews* [(1965) 234 Cal.App.2d 69,] 75; 5 Am.Jur.2d [(1995)] Arson and Related Offenses, § 7, p. 786; accord, *U.S.* v. *Doe, supra*, 136 F.3d at p. 635.) 'Because the offensive or dangerous character of the defendant's conduct, by virtue of its nature, contemplates such injury, a general criminal intent to commit the act suffices to establish the requisite mental state.' (Cf. *People v. Colantuono* [(1994) 7 Cal.4th 206,] 215 [assault].) Thus, there must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property. (See *People v. Fry* [(1993) 19 Cal.App.4th 1334,] 1339; Perkins & Boyce, Criminal Law (3d ed. 1982) Offenses Against Habitation and Occupancy, § 2, pp. 276-277; cf. *People v. Rocha* [(1971) 3 Cal.3d 893,] 899 [assault]; *People v. Bohmer* [(1975) 46 Cal.App.3d 185,] 190 [malicious placement of obstruction on railroad tracks].)" (*Atkins, supra*, 25 Cal.4th at pp. 88-89.)

Tracking the language with which we described arson's malice requirement in *Atkins*, *supra*, 25 Cal.4th at page 89, the juvenile court stated, "the question to me is whether I believe that the natural and probable consequence or highly probable consequence of lighting a firecracker on a hillside and throwing it some distance away trying to hit a patch of green or a patch of cement . . . and then the hill catches on fire — whether that meets the requirement of the law. And, I guess, I think it does." Thus, the juvenile court found that arson's malice requirement was established in this case.[3]

---

[3] Justice Werdegar's dissent incorrectly asserts the juvenile court failed to find that V.V. and J.H. acted with malice. (Dis. opn. of Werdegar, J., *post*, at p. 3; *id*. at p. 6.) In addition to expressly stating that the facts of this case "meet[] the requirement of the law" in establishing arson, the juvenile court, in sustaining the petition's arson allegation, necessarily found that the element of malice was

*(footnote continued on next page)*

Substantial evidence supports the juvenile court's finding of malice. V.V. and J.H. were equal participants. Although J.H. brought large "cherry bombs" to the hill, both J.H. and V.V. had the idea of lighting one. J.H. held the firecracker while V.V. lit it with J.H.'s lighter. J.H. then threw the ignited firecracker into dry brush on the hillside.

The juvenile court further found that, despite their intentional acts, V.V. and J.H. did not intend to set the hillside on fire and tried to avoid such a consequence. Nevertheless, the court correctly recognized "that's not the issue." V.V. and J.H. were not required to know or be subjectively aware that the fire would be the probable consequence of their acts. (See *U.S. v. Doe, supra*, 136 F.3d at p. 635 [common law arson does not require proof of intent to burn down building, or of knowledge this would be the probable consequence of defendant's act]; cf. *People v. Wyatt* (2010) 48 Cal.4th 776, 781 [defendant need not know or be subjectively aware his assaultive act is capable of causing great bodily injury]; see also *People v. Hayes, supra*, 120 Cal.App.4th at p. 803, fn. 3 ["[t]he second definition — intent to do a *wrongful* act — has never been construed, so far as we can determine, to require knowledge by the defendant that his or her conduct violated social norms"].) A defendant may be guilty of arson if he or she acts with awareness of facts that would lead a reasonable person to realize that the direct, natural, and highly probable consequence of igniting and throwing a firecracker into dry brush would be the burning of the hillside. (Cf. *People v. Wyatt, supra*, 48 Cal.4th at p. 781.) Here, V.V. and J.H. were aware of such facts.

*(footnote continued from previous page)*

established. (See *Sullivan v. Louisiana* (1993) 508 U.S. 275, 277-278 [in returning guilty verdict, fact finder necessarily determines elements of crime established by facts beyond a reasonable doubt].)

Although V.V. and J.H. did not intend to set the hillside on fire, they knew that their intentional acts created a fire hazard. J.H. told the police he attempted to throw the firecracker onto a concrete area on the hillside, while V.V. said they wanted to throw the firecracker onto a green area on the hillside. The juvenile court reasonably inferred that because V.V. and J.H. tried to avoid the dry brush, they knew a fire could result from setting off the large "cherry bomb" on the brush-covered hillside. V.V. and J.H. also told the police that the third minor did not want to participate in lighting the firecrackers because he feared that someone might get injured. Thus, the third minor alerted V.V. and J.H. beforehand to the dangers of playing with firecrackers.[4] Moreover, the concrete area was about 150 yards from the fire's point of origin and more than 150 yards away from V.V. and J.H.. A reasonable person would not have objectively believed that a firecracker thrown from V.V.'s and J.H.'s position would reach the concrete area. Thus, V.V. and J.H. were aware of facts that would lead a reasonable person to realize that the direct, natural, and highly probable consequence of throwing a lit "cherry bomb" from their location would be its landing in the dry brush short of the concrete area and causing a fire.

---

[4]     V.V.'s interview with the police reflects that the third minor alerted V.V. and J.H. to the dangers of playing with firecrackers *before* setting off the firecracker on the hillside:
"[Officer]: "Alright, so you guys climbed the mountain and then what happened?
V.V.: "We got to the top and we're like and . . . we got to the top and we're kinda like (unintelligible) because it is hard getting to the top.
[Officer]: "Um-hum.
V.V.: "We, *Ivan didn't want to because he said what if someone gets injured.*
[Officer]: "Was everyone gonna light one?
V.V.: "No, no just one. Just to make a lot of noise. And. . .
[Officer]: Whose idea was it to light one?
V.V.: Ah, [J.H.'s], both of us, me and [J.H.]."

Indeed, the record supports an inference that V.V. and J.H. were not surprised or upset that the firecracker exploded in dry brush and caused a fire. Ara Moujoukian testified that V.V. and J.H. were yelling, laughing, "high-fiving," and seemingly having a good time moments after they realized the hillside was on fire.[5] When Moujoukian asked what they were doing, V.V. and J.H. ran away and did not notify the authorities about the brush fire. These facts suggest that V.V. and J.H. did not realistically expect that the thrown "cherry bomb" would reach the concrete area. From the above evidence, the juvenile court reasonably inferred that V.V. and J.H. acted with malice.[6]

[5]    Justice Werdegar's dissent inaccurately asserts that the juvenile court did not rely on Moujoukian's testimony about V.V.'s and J.H.'s laughter, yells, and high-fiving gestures in light of the parties' stipulation that the witness did not tell the police about this behavior. (Dis. opn. of Werdegar, J., *post*, at p. 5.) In fact, the parties stipulated only that the interviewing officer's police report contained certain statements made by Moujoukian, which did not include a description of the above behavior. The prosecutor specifically stated, "we're not including in the stipulation as to what was exactly was told or not told" to the officer. The court accepted the stipulation and never expressed or implied any doubt about Moujoukian's testimony. We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably have deduced from the evidence. (*People v. Medina, supra*, 46 Cal.4th at p. 925, fn. 2.)

[6]    In arguing that the majority opinion does not comport with the law (dis. opn. of Werdegar, J., *post*, at p. 1), Justice Werdegar's dissent repeatedly asserts that the majority presumes malice simply from the commission of the volitional act that causes a fire to start. (*Id*. at pp. 3, 6-7.) In making these assertions, the dissent never recognizes that, in upholding the juvenile court's malice finding, we have applied the standard of malice, as stated in *Atkins*. (*Ante*, at p. 10.) There, we stated "[T]here must be a general intent to willfully commit the act of setting on fire *under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property*." (*Atkins, supra*, 25 Cal.4th at p. 89, italics added.) The unitalicized language describes arson's willful requirement, or as the dissent characterizes it, the "volitional act" requirement (dis. opn. of Werdegar, J., *post*, at p. 3), i.e., that the act of setting fire to, of burning, or that causes to be burned (§ 451) is intentional. The italicized language describes arson's malice requirement, i.e., that the willful

*(footnote continued on next page)*

V.V. and J.H. claim that the evidence supports a finding only that they had committed the offense of unlawfully causing a fire (§ 452) because their conduct was reckless and resulted in an accidental fire. "[T]he offense of unlawfully causing a fire covers reckless accidents or unintentional fires, which, by definition, is committed by a person who is 'aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property.' (§§ 450, subd. (f), 452.)" (*Atkins, supra*, 25 Cal.4th at p. 89.) We disagree.

This was not an accidental or unintentional ignition. A similar situation occurred in *U.S. v. Doe, supra*, 136 F.3d 631, which we cited with approval in *Atkins, supra*, 25 Cal.4th at page 88. There, a juvenile intentionally set fire to paper towels in a dispenser in the girls' bathroom of a school. With a lighter, the juvenile lit one corner of a paper towel from the dispenser, let the towel burn for a few seconds, blew out the flame, and put the burned towel in the sink. She then lit the left corner of a paper towel protruding from the dispenser, let the flame burn for a second, and blew it out. She lit the right corner of the same towel in the dispenser, blew it out, and left the bathroom. The building caught fire. An investigation revealed that the fire originated in the girls' bathroom. (*U.S. v. Doe, supra*, 136 F.3d at pp. 633-634, 636.) In affirming the juvenile's arson conviction, the court did not base its decision on whose paper towels were set on fire and left smoldering in the bathroom. (See dis. opn. of Kennard, J., *post*, at p. 2.) Instead, in construing the common law definition of arson, the court reasoned that the

---

*(footnote continued from previous page)*

and intentional act is committed under circumstances that create an obvious fire hazard. Thus, a willful act that causes a fire without further evidence of the underlying circumstances would be insufficient to establish malice.

14

"elements of willfulness and maliciousness are established by proof that the defendant set the fire intentionally and without justification or lawful excuse" with "no suggestion that the fire started as a result of accident or negligence." (*U.S. v. Doe, supra*, 136 F.3d at pp. 635-636.)[7]

As in *U.S. v. Doe*, *supra*, 136 F.3d 631, the evidence here supports the juvenile court's finding that V.V.'s and J.H.'s intentional conduct of setting fire to and throwing a large "cherry bomb" that exploded in dry brush, causing a fire, was willful and malicious.[8]

---

[7]    In *Atkins, supra*, 25 Cal.4th 76, 89, we observed that "reckless accidents or unintentional fires may include those caused by a person who recklessly lights a match near highly combustible materials." Defendants argue that their conduct was more akin to this type of reckless conduct. The Attorney General responds that the affirmative acts of lighting *and* throwing a firecracker into dry brush is qualitatively different from merely lighting a match near combustible materials. She counters that more apt examples of reckless behavior would be an instance when a person who carves open a firecracker to check for gunpowder, next to a lit cigarette — and it explodes in a location of obvious fire danger; or a person who lights a firecracker, but instead of throwing it, fumbles with it, and it falls on dry brush; or a farmer who burns crops on a very windy and dry day.

In *U.S. v. Doe, supra*, 136 F.3d 631, the court compared the facts of that case to other types of conduct, such as the burning of a building caused by a smoldering cigarette butt tossed into a trash can or caused by lighted candles placed too close to drapes. The court distinguished those hypotheticals, commenting that "the present case . . . is more analogous to intentionally setting fire to the drapes and then walking away in the (erroneous) belief that the fire had been blown out. While one can argue that that is a close case for the trier of fact, on that evidence the trier of fact would be entitled to return a verdict of guilty." (*U.S. v. Doe, supra*, 136 F.3d at p. 635, fn. 5.) Similarly, defendants' conduct here is more analogous to intentionally throwing a lighted match on a brush-covered hill, unsuccessfully aiming for a concrete area amidst the dry brush, and causing a brush fire.

[8]    Contrary to the Justice Werdegar's dissent, our holding would not "render every unlawful fire under section 452 also an arson under section 451." (Dis. opn. of Werdegar, J., *post*, at p. 7.) "That defendant's willful and malicious conduct may *also* have been reckless does not suggest that he may not be convicted of

*(footnote continued on next page)*

## III. DISPOSITION

We affirm the judgment of the Court of Appeal relating to the arson finding in V.V.'s case. We reverse the judgment of the Court of Appeal relating to the arson finding in J.H.'s case and remand the case to that court for further proceedings consistent with this opinion.

**CHIN, J.**

WE CONCUR:

CANTIL-SAKAUYE, C.J.
BAXTER, J.
CORRIGAN, J.
BANKE, J.*

---

*(footnote continued from previous page)*

arson . . . or that his culpability is the same as someone who [performs the act] recklessly." (*People v. Fry* (1993) 19 Cal.App.4th 1334, 1339.)

* Associate Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**DISSENTING OPINION BY KENNARD, J.**


One dry summer day, two teenagers lit a type of firecracker commonly known as a "cherry bomb" and threw it down a brush-covered hill. When the cherry bomb exploded, the brush caught fire. The teenagers who threw the cherry bomb (V.V. and J.H.) were captured and were later found guilty in juvenile court of arson of forest land. (Pen. Code, § 451, subd. (c).)[1]

The majority here upholds the juvenile court's finding. I disagree. As Justice Werdegar's dissent (which I have signed) persuasively explains, the evidence is insufficient to show that V.V. and J.H. acted with malice, a necessary element of the crime of arson. Instead, they were guilty only of reckless firesetting (§ 452), which is a serious crime but not so serious as arson. I write to comment on the majority's erroneous assertion that the fire started by V.V. and J.H. was not accidentally set.

As this court explained in *People v. Atkins* (2001) 25 Cal.4th 76, California's arson statute applies only to fires that are set *deliberately*, not to those set *accidentally*. The statutory requirement that the defendant act willfully and with malice, we said, "ensures that the setting of the fire must be a deliberate and

_____

[1]    All statutory citations are to the Penal Code.


1

intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire." (*Id.* at p. 88.)  By contrast, we said, the crime of reckless firesetting (§ 452) "covers reckless accidents or unintentional fires [caused by] a person who is 'aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property.' " (*Atkins* at p. 89, quoting §§ 450, subd. (f), 452.)

Here, the court commissioner hearing the matter expressly found that V.V. and J.H. did *not* intend to set the fire that resulted when the cherry bomb exploded on the hillside.  Nevertheless, the majority concludes:  "This was not an accidental or unintentional ignition." (Maj. opn., *ante*, at p. 14.)  The majority's only explanation for that bald assertion is to say that the facts here are comparable to those of *U.S. v. Doe* (9th Cir. 1998) 136 F.3d 631 (*Doe*), a case cited with approval in *People v. Atkins*, *supra*, 25 Cal.4th at page 88.  In *Doe*, a juvenile intentionally set fire to several paper towels from a dispenser in a school restroom.  Although she blew out the flame, sparks remained, which eventually set the building on fire.  The federal Court of Appeals upheld the juvenile's arson conviction, reasoning that she had acted maliciously because she "set the fire intentionally and without justification or lawful excuse." (*Doe*, *supra*, at pp. 635-636.)

But the facts here are *not* comparable to those of *Doe*, *supra*, 136 F.3d 631.  The minor in *Doe intentionally and illegally set fire to the school's property* (the paper towels) and the fire thereafter spread.  Intentionally setting that fire was the illegal act that furnished the requisite malice to support the arson conviction in that case.  Here, by contrast, V.V. and J.H. did not intentionally set a fire; they exploded a cherry bomb.  That act, under the circumstances in which they did it, was criminally reckless, and it therefore violated section 452 (reckless firesetting).  But because the fire that resulted from the explosion was accidental, they were not

2

guilty of arson of forest land, the offense the court commissioner found them to have committed.

In short, V.V. and J.H. performed three intentional acts which, in combination, resulted in the hillside being set ablaze: (1) they lit a match; (2) they used the match to light the fuse to a cherry bomb; and (3) they flung the cherry bomb down the hillside just before it exploded. The first and second of these acts were innocuous and entirely proper, assuming it was legally permissible to use fireworks in the area where they were standing (an assumption unrebutted by the record in this case); the third act was criminally reckless. But by committing the third act, V.V. and J.H. did not deliberately set a fire. Although a fire resulted from that act, that fire was an accident: As V.V. told the police officer that questioned him, they set off the cherry bomb "[j]ust to make a lot of noise." They therefore did not act maliciously, and thus were not guilty of violating section 451's subdivision (c) (arson of forest land).

KENNARD, J.

3

**DISSENTING OPINION BY WERDEGAR, J.**

The majority opinion, in my view, comports with neither the facts nor the law.  Accordingly, I respectfully dissent.

The minors in this case played with fireworks on the edge of the Angeles National Forest shortly after July 4th, when fireworks were plentiful and the brush was dry.  Their reckless conduct would, if committed by adults, have constituted the felony of unlawfully causing a fire.  (See Pen. Code, § 452.)[1]  Contrary to the majority, however, the minors' conduct did not amount to arson.  (§ 451.)

A person is guilty of arson when he or she "willfully and maliciously sets fire to . . . forest land . . . ."  (§ 451.)  "Willfully," for all practical purposes, means nothing more than that the prohibited act was intentionally done.  (See *People v. Atkins* (2001) 25 Cal.4th 76, 85 (*Atkins*).)  The term "implies simply a purpose or willingness to commit the act . . . .  It does not require any intent to violate law, or to injure another . . . ."  (§ 7, par. 1.)  There is no dispute that the minors willfully — that is intentionally — lit the firecracker that started the fire.  In contrast, the term "maliciously" imports an additional element, namely, "a wish to vex,

---

[1]      All further citations to statutes are to the Penal Code.

1

defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (§ 450, subd. (e).)

The court commissioner who conducted the juvenile hearing in this case expressly found the minors did not intend to set the hillside on fire. He believed the dispositive question was simply whether "the natural and probable consequence or highly probable consequence of lighting a firecracker on a hillside and throwing it some distance away trying to hit a patch of green or a patch of cement" satisfied the statutory definition of arson. (§ 451.) Certainly the minors lit the firecracker "willfully" (*ibid.*); the act was clearly volitional. But nothing in the record justifies the majority's conclusion the minors also lit the firecracker "maliciously." (*Ibid.*) No evidence was introduced to show the minors had "a wish to vex, defraud, annoy, or injure another person, or an intent to do a *wrongful* act . . . ." (§ 450, subd. (e), italics added.) The only evidence concerning the minors' purpose in lighting fireworks comes from their statements to police and reflects nothing more than a common youthful enthusiasm for loud noises.[2] Had the minors lit fireworks in violation of an ordinance prohibiting them, their conduct would certainly have been "wrongful," and thus malicious (§ 450, subd. (e)), but the People do not claim the minors violated any such ordinance.

The majority offers various analytical paths to the conclusion that the minors acted with malice. I find all of them unsupportable. At one point, the majority seems to presume malice "*from the deliberate and intentional ignition or*

---

[2]    V.V. told police that he and J.H. had lit the firecracker "just to make a lot of noise." J.H. explained he had gotten the fireworks on "July, 4th of July. And . . . there was a bunch of fireworks in Compton and I just saw some guys, like a [round] of guys throwing some fireworks. Boom! And they were like exploding and it was like wow!"

2

*act of setting a fire* without a legal justification, excuse, or claim of right." (Maj. opn., *ante*, at p. 9, italics added.) This approach has two problems. First, the minors did not intend to set a fire at all, as the commissioner expressly held, let alone maliciously. What they intended was to explode a firecracker. The majority does not argue the minors committed arson by setting fire to *the firecracker*, as that view of the facts would implicate not the general prohibition of arson (§ 451), but a different provision punishing those who set fire to their own property and thereby cause injury to forest land (§ 451, subd. (d)). Second, the authority the majority offers as support (*Atkins*, *supra*, 25 Cal.4th 76, 88-89) for presuming malice under these circumstances provides no support. What we actually stated in *Atkins* is that "[a]rson's malice requirement ensures that the act is 'done with a design to do an intentional *wrongful* act . . . without any legal justification, excuse or claim of right.' " (*Id.*, at p. 88, quoting 5 Am.Jur.2d (1995) Arson and Related Offenses, § 7, p. 786, italics added.) Malice thus requires, in addition to an intentional (i.e., volitional, willful) act, a *wrongful* one. Or, to quote the relevant California statute, "a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act . . . ." (§ 450, subd. (e).) Today, the majority ignores the requirement of wrongfulness and presumes malice simply from the commission of the volitional act that causes a fire to start, thus eviscerating the statutory requirement of malice.

Later in its opinion, trying another approach, the majority asserts the commissioner found the minors acted with malice. (Maj. opn., *ante*, at p. 10.) Had he done so, he would on this record have erred. But in fact, the commissioner made no such finding; like the majority, he *presumed* malice simply from the

3

lighting and throwing of the firecracker.**3** The record discloses the only aspect of the mental state required for arson to which the commissioner directed his attention was the holding of *Atkins*, *supra*, 25 Cal.4th 76, 84, that arson does not require "the specific intent to set fire to or burn or cause to be burned the relevant structure or forest land . . . ." He made no effort to determine whether the minors had acted, in the words of the statute, with "a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act . . . ." (§ 450, subd. (e).)

The commissioner may have proceeded as he did from a misreading of *Atkins*, *supra*, 25 Cal.4th 76, where the defendant deliberately ignited a fire in weeds near the house of a man he had declared he hated, resulting in the burning of an entire canyon. Rejecting the defendant's argument that arson requires the specific intent to burn the relevant structure or forest land, thus allowing a defense of voluntary intoxication, we concluded that "arson requires only a general criminal intent and that the specific intent to set fire to or burn or cause to be burned the relevant structure or forest land is not an element of arson." (*Id.*, at p. 84.) In this context of the defendant's deliberate setting of fire to weeds, which in turn ignited a canyon, we explained that "there must be a general intent to willfully commit the act of setting on fire *under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property*." (*Id.*, at p. 89, italics added.)

---

**3** The commissioner explained his ruling in these words: "The question to me is whether I believe that the natural and probable consequence or highly probable consequence of lighting a firecracker on a hillside and throwing it some distance away trying to hit a patch of green or a patch of cement. So it does not cause the hill to catch on fire and then the hill catches on fire whether that meets the requirement of the law. And, I guess, I think it does. That's notwithstanding the fact that I don't believe the kids had any intention to set the hill on fire; that's not the issue."

4

Now embracing the commissioner's misreading of *Atkins*, *supra*, 25 Cal.4th 76, the majority describes the italicized language quoted above as "describ[ing] arson's malice requirement . . . ." (Maj. opn., *ante*, at p. 10.) To the contrary, *Atkins* repeatedly describes the element of malice as requiring something *in addition* to the intent to commit the volitional act that starts a fire, namely, " 'a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act . . . .' " (*Atkins*, at p. 85, quoting § 450, subd. (e); see also *Atkins*, at p. 88.)[4] This additional element was present in *Atkins*; it is not present here.

The majority's effort to demonstrate the evidence in this case would have supported a finding of malice is unconvincing. First, relying on the testimony of one of the two homeowners who reported the fire, the majority states the minors "were yelling, laughing, 'high-fiving,' and seemingly having a good time moments after they realized the hillside was on fire." (Maj. opn., *ante*, at p. 13.) What the majority overlooks is that the commissioner did not rely on this testimony, after the parties stipulated and the commissioner acknowledged the witness had mentioned no such behavior when interviewed by police.[5] Instead of relying on disputed circumstantial evidence of the minors' mental state, the commissioner as noted simply presumed malice from the fact they had lit and thrown a firecracker. Second, the majority states that a third minor, who did not want to participate in lighting fireworks, had "feared that someone might get

---

[4]    "Arson's malice requirement ensures that the act is 'done with a design to do an intentional wrongful act . . . without any legal justification, excuse or claim of right.' [Citation.]" (*Atkins*, *supra*, 25 Cal.4th 76, 88.)

[5]    Similarly, although the majority asserts the minors "were not surprised or upset that the firecracker exploded in dry brush and caused a fire" (maj. opn., *ante*, at p. 13), the minors actually stated they were "scared" (V.V.) and "terrified" (J.H.).

5

injured" and thus "alerted V.V. and J.H. beforehand to the dangers of playing with firecrackers." (Maj. opn., *ante*, at p. 12.) While J.H. did tell police the third minor feared someone might get hurt, the third minor mentioned injury due to *fire* only after the fire started, as part of the minors' discussion about whether they should turn themselves in to the authorities.[6] Finally, the majority asserts the minors "ran away and did not notify the authorities about the brush fire." (Maj. opn., *ante*, at p. 13.) This statement, too, mischaracterizes the record. The minors, who had no cell phone and no prior involvement with the criminal justice system, ran down the hill and immediately volunteered to the first officer they encountered their role in starting the fire.[7]

In short, I find no substantial evidence in the record to support the finding of malice the arson statute requires but the commissioner failed to make. Nor, absent such evidence, can I agree with the majority that malice may be presumed simply from the doing of a volitional act that is not inherently or necessarily "wrongful" (§ 450, subd. (e)) or done with "a wish to vex, defraud, annoy, or injure another person . . ." (*ibid.*).

---

[6]     J.H. told police: "After that we were like, 'Dude, we should just give ourselves in cause we did it.' *He's like, and someone might get hurt. We were like damn, we started a fire.*" (Italics added.)

[7]     J.H.: "And when we got down there, we were like, 'Dude, we, we should just . . .' like 'cause like even if . . . like we knew the cops were coming and we, like, we didn't even ran, like we ran at first and then we were like, 'Dude, naw. We're gonna stop and we're gonna give ourselves in.' And then like when the cops came, we were just like stop them and were like ok yeah we did it. It was us. He didn't even ask us anything. We were like, 'we started the fire, it was us.'"

At the juvenile court hearing, the People did not call as a witness the police sergeant who first encountered and spoke with the minors after the fire started. The later arriving officer who did testify acknowledged he did not know what the minors and the sergeant had said to one another.

6

The majority's determination the minors committed arson is particularly inappropriate in light of section 452, which the Legislature enacted in 1979 specifically to punish reckless behavior that sets fire to forest lands. Under section 452, "[a] person is guilty of unlawfully causing a fire when he recklessly sets fire to or burns or causes to be burned, any structure, forest land or property." The term "recklessly," in this context, "means a person is aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property. The risk shall be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." (§ 450, subd. (f).) The enrolled bill report on the legislation that became section 452 cited carelessness with fireworks as a paradigmatic example of conduct the Legislature intended to reach.[8] (See generally *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1218, fn. 3 [enrolled bill reports properly considered as evidence of legislative intent].)

To presume malice from nothing more than the volitional act that causes a fire to start could render every unlawful fire under section 452 also an arson under section 451. The Legislature, which we assume does not perform idle acts or enact superfluous legislation (e.g., *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 390), could not have intended this result. Evidently anxious to avoid any such logical, albeit extreme, extension of its holding, the majority offers hypothetical fire-starting scenarios to demonstrate that not all

---

**8**     "For example, though unintended, a fire which results from gross carelessness would qualify (such as playing with matches or fireworks or unattended campfires)." (Health & Welf. Agency, Enrolled Bill Rep. on Sen. Bill No. 116 (1979-1980 Reg. Sess.) June 2, 1979, p. 1.)

recklessly started fires will qualify as arson.  I find the scenarios either contrived and implausible, as that of "a person who carves open a firecracker to check for gunpowder, next to a lit cigarette" (maj. opn., *ante*, at p. 15, fn. 7), or practically indistinguishable from the case before us, as that of "a person who lights a firecracker, but instead of throwing it, fumbles with it, and it falls on dry brush" (*ibid.*).  To attribute special significance to the fact a firecracker is thrown, as the majority does, seems odd, because one does not ordinarily continue to hold a firecracker that is about to explode.  Had the minors deliberately thrown the firecracker into dry brush, the throwing might have had special significance.  But the commissioner expressly found the minors had not intended to set a fire and expressly based his ruling on the assumption they were "trying to hit a patch of green or a patch of cement."

In summary, I find the majority's reasoning and conclusion unsupportable.  Accordingly, I dissent.

**WERDEGAR, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re V.V. and In re J.H.

_____

**Unpublished Opinion** XXX NP opn. filed 9/24/09 – 2d Dist., Div. 1 (In re V.V.)
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 179 Cal.App.4th 1337 (In re J.H.)
**Rehearing Granted**

_____

**Opinion No.** S177654 and S179579
**Date Filed:** June 6, 2011

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Robert Leventer, Juvenile Court Referee

_____

**Counsel:**

Laini Millar Melnick, under appointment by the Supreme Court, for Defendant and Appellant V.V.

Nancy L. Tetreault, under appointment by the Supreme Court, and Holly Jackson, under appointment by the Court of Appeal, for Defendant and Appellant J.H.

Edmund G. Brown, Jr., and Kamala G. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters, Susan D. Martynec, Paul M. Roadarmel, Jr., and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Laini Millar Melnick
610 Anacapa Street
Santa Barbara, CA 93101
(805) 564-7025

Nancy L. Tetreault
346 No. Larchmont Boulevard
Los Angeles, CA 90004
(310) 832-6233

Robert M. Snider
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 897-2387