Filed 2/28/13  In re Giselle P. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| In re GISELLE P., a Person Coming Under the Juvenile Court Law. | |
| | D061148 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J229879) |
| v. | |
| GISELLE P., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Affirmed as modified.

The juvenile court found Giselle P. committed the felony offenses of importing more than four kilograms of cocaine into the United States (count 1), possessing cocaine for sale (count 2), and possessing cocaine (count 3).  The court adjudged Giselle to be a ward of the court, ordered her committed to the Short Term Offender Program, and imposed other terms and conditions of probation.  Giselle appeals,

contending (1) the true findings must be reversed because she presented sufficient evidence that she acted under duress, and (2) the true finding on count 3 (simple possession) must be reversed because it is a lesser included offense of count 2 (possession for sale). The Attorney General concedes, and we agree, that count 3 is a lesser included offense of count 2 and thus, the true finding on count 3 must be reversed. In all other respects, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2011, a Customs and Border Protection (CBP) officer referred Giselle to secondary inspection at the San Ysidro port of entry. At the secondary inspection, Giselle lifted her blouse revealing a body suit with bulges in it. She stated, "They made me do it and I'm glad you found it." A CBP officer found four packages containing approximately four kilograms of cocaine hidden in the body suit.

At trial, Giselle testified on her own behalf. She stated that she met Yolanda Ramirez at school in Tijuana. Ramirez introduced her boyfriend, "Sancho," to Giselle and told him that Giselle was born in the United States. Sancho then asked Giselle if she wanted to make money by transporting drugs across the border. In response, Giselle stated that she did not need any extra money.

Sancho later told Giselle she was a "snot-nose brat" and stupid for turning down his offer. He also threatened her, stating that he knew where she lived and when her mother and sisters went to work and school. Sancho and Ramirez told Giselle not to say anything or change her phone number. Thereafter, Giselle was afraid and

2

transported small packages of drugs across the border on two occasions because Ramirez and Sancho reminded her of the prior threats.

The third time Giselle carried drugs across the border for Ramirez and Sancho was on the date of her arrest in September 2011. This time, they called her and demanded that she meet them at 4:00 a.m. When Giselle stated she could not leave her house that early because her mother would find out, they stated, "[J]ust remember what could happen to your mom or to your sisters."

Giselle met with Ramirez and Sancho as directed. They drove to a house in Tijuana where Ramirez and Sancho tied the drugs on Giselle so tight that she cried. They yelled at her not to cry and again reminded her of the threats. When they all got to the pedestrian border crossing, Ramirez and Sancho told Giselle not to look back because they knew her every move and not to say anything or she would not find her family when she returned.

After hearing the evidence, the juvenile court rejected Giselle's duress defense finding that the threats were nonspecific and did not present an immediate danger.

DISCUSSION

Giselle contends the juvenile court erred in rejecting her duress defense because there was sufficient evidence to support it as a matter of law. We disagree.

"Our review of [a minor's] substantial evidence claim is governed by the same standard applicable to adult criminal cases. [Citation.] 'In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

3

elements of the crime beyond a reasonable doubt." [Citation.]' [Citation.] '"[O]ur role on appeal is a limited one." [Citation.] Under the substantial evidence rule, we must presume in support of the judgment the existence of every fact that the trier of fact could reasonably have deduced from the evidence. [Citation.] Thus, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]' [Citation.]" (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.) We may not reweigh the evidence, reappraise the credibility of the witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact. (*People v. Pitts* (1990) 223 Cal.App.3d 606, 884.)

"Duress is an effective defense only when the actor responds to an immediate and imminent danger. '[A] fear of *future* harm to one's life does not relieve one of responsibility for the crimes he commits.'" (*People v. Heath* (1989) 207 Cal.App.3d 892, 900.) "'Because of the immediacy requirement, a person committing a crime under duress has only the choice of imminent death or executing the requested crime. The person being threatened has no time to formulate what is a reasonable and viable course of conduct nor to formulate criminal intent. . . .' Decisions upholding the duress defense have uniformly involved '"a present and active aggressor threatening immediate danger."'" (*People v. Petznick* (2003) 114 Cal.App.4th 663, 676 (*Petznick*).)

4

Here, viewing the evidence in the light most favorable to the prosecution, there was substantial evidence to support the juvenile court's finding that Giselle did not act under an immediate or imminent threat of harm. Giselle's own testimony demonstrates that the threats did not present an immediate danger. She testified that the threats consisted of Ramirez and Sancho telling her they knew where her family lived and when her mother and sisters went to work and school. Additionally, when they got to the border, Ramirez and Sancho told Giselle not to look back because they knew her every move and not to say anything or she would not find her family when she returned. These threats were vague assertions of future harm. "A 'phantasmagoria of future harm' such as a threat of death to be carried out at some undefined time, will not diminish criminal culpability." (*Petznick*, *supra*, 114 Cal.App.4th at pp. 676–677.)

The imminency requirement is also not satisfied because Giselle had numerous opportunities to reflect on her actions. She had the option to seek assistance or decline to participate in the criminal act several times. For example, Giselle did not have to meet with Sancho and Ramirez at 4:00 in the morning or, at a minimum, she had the ability to seek assistance when she was outside their immediate presence. Instead, Giselle waited until she was referred to secondary inspection and was about to undergo a pat-down search before she revealed the drugs hidden in her clothing. Prior to that point, she had multiple chances to formulate a reasonable response, but she did not do so.

Based on the foregoing, we conclude there was substantial evidence to support the trial court's rejection of Giselle's duress defense.

DISPOSITION

The true finding on count 3 for a violation of Health and Safety Code section 11350, subdivision (a), possession of cocaine, is reversed. As modified, the judgment is affirmed.


McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.