Filed 1/20/15  P. v. Lewis CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DARRYLL L. LEWIS,<br><br>    Defendant and Appellant. | B252090<br><br>(Los Angeles County<br>Super. Ct. No. BA398878) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gail Ruderman Feuer, Judge.  Affirmed in part; reversed in part.

Greg Demirchyan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II and Mark C. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following a court trial, Darryll L. Lewis was convicted of arson (Pen. Code, § 451, subd. (d))[1] and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and admitted having served two separate prison terms for felonies.[2] On appeal, Lewis contends there was insufficient evidence he possessed a usable amount of methamphetamine and the court erroneously excluded evidence of insanity. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Summary of Trial Evidence*

   a. *The People's evidence*

On the afternoon of June 14, 2012, Lewis attended an Alcoholics Anonymous meeting hosted by Reyna Herrera and Martin Rosas at their coffee shop in Hollywood. When the meeting ended, all the attendees left except Lewis, who went into the coffee shop bathroom. Minutes later, he emerged and sat down at a table. Lewis had pulled down his pants, and he was shaking and nonresponsive when Rosas spoke to him. Rosas testified Lewis seemed to be "somewhere else mentally." Noticing smoke emanating from the bathroom, Rosas entered and discovered two artificial plants on fire. He extinguished the flames and called the police emergency number. Firefighters and police officers soon arrived.

Jose Sanchez, the arson investigator, examined the artificial plants inside the bathroom and discovered paper had been intertwined with the leaves and a lighter had been left next to one of the plants. Sanchez opined the fire had been caused when someone lit the paper after placing it next to the plants.

---

**1**      Statutory references are to the Penal Code, unless otherwise indicated.

**2**      The trial court found not true a third count of possession of a smoking device (Health & Saf. Code, § 11364.1). At the sentencing hearing, the court suspended imposition of sentence and placed Lewis on five years of formal probation on condition he serve one year in county jail, with credit for time served, and attend a one-year residential drug treatment program.

2

Lewis was arrested and transported to the hospital, where police attempted to interview him; his responses were unintelligible.

Los Angeles Police Officer Arthur Spafford searched the backpack Lewis had with him at the coffee shop and discovered two small plastic bags containing "a white crystalline substance" resembling crystal methamphetamine. Spafford testified he found the plastic bags inside a coin pouch or purse, which was with Lewis's personal belongings inside the backpack. The parties stipulated the two plastic bags contained a combined total of .02 grams of methamphetamine.

b. *The defense evidence*

To prove Lewis did not have the requisite mental state at the time of the arson, Lewis's counsel sought to introduce a psychiatric report by Dr. Crandall, in which she opined Lewis was insane when the offense was committed. Counsel also wanted to introduce the testimony of Lewis's father, Percy Lewis, concerning Lewis's mental state. The court sustained the prosecutor's relevance objection to the report on the ground that arson is a general intent crime. The court ruled the report as well as the testimony of Lewis's father as to his son's mental state was inadmissible unless it showed Lewis was either unconscious at the time of the fire or had set it by accident. Following the court's ruling, Lewis's counsel declined to present an affirmative defense.

## DISCUSSION

1. *There is Not Substantial Evidence to Support Lewis's Conviction for Possession of Methamphetamine (Count Two)*

a. *Standard of review*

To assess a claim of insufficient evidence in a criminal case, "we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we

3

review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; accord *People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

> c. *The trial court could not reasonably infer .02 grams of methamphetamine was a usable amount*

A "usable amount" of a controlled substance is a quantity sufficient to be consumed in any manner customarily employed by users of the substance, as opposed to debris or useless traces. (*People v. Piper* (1971) 19 Cal.App.3d 248, 250.) In *People v. Leal* (1966) 64 Cal.2d 504, 512 (*Leal*), the Supreme Court held, "[I]n penalizing a person who possesses a narcotic the Legislature proscribed possession of a substance that has a narcotic potential; it condemned the commodity that could be used as such. It did not refer to *useless* traces or residue of such [a] substance. Hence the possession of a minute crystalline residue of narcotic useless for . . . consumption . . . does not constitute sufficient evidence in itself to sustain a conviction." In *People v. Rubacalba* (1993) 6 Cal.4th 62, 66, the Supreme Court clarified "the *Leal* usable-quantity rule prohibits conviction only when the substance possessed simply cannot be used, such as when it is a blackened residue or a useless trace. It does not extend to a substance containing contraband, even if not pure, if the substance is in a form and quantity that can be used. No particular purity or narcotic effect need be proven."

Lewis contends the record is devoid of evidence the .02 grams of methamphetamine recovered from his backpack was a usable quantity. There was no

4

testimony as to the average dose of methamphetamine (see *People v. Morales* (1968) 259 Cal.App.2d 290, 295 [sufficient evidence of usable quantity when officer testified concerning average dose]), the monetary value of the recovered methamphetamine, or any opinion testimony from a police officer or other drug expert that the amount recovered was a usable quantity.

As a result, there was no evidence from which the trial court could conclude there was a usable quantity. Although, in other cases, .02 grams has been held to be usable, that conclusion was based on actual testimony, not a silent record. (See *People v. Miranda* (2008) 161 Cal.App.4th 98, 104 [expert testimony that .02 grams of methamphetamine was a usable quantity].)

2. *The Trial Court Properly Excluded Evidence of Insanity* (*Count One*)

To be convicted of arson, the evidence must show the defendant acted "willfully and maliciously" in setting fire to, or causing to burn, any structure, property or forest land. (§ 451.) "[W]hen applied to the intent with which an act is done or omitted," the term "willfully" "implies simply a purpose or willingness to commit the act." (§ 7, item 1.) "Maliciously' imports a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (§ 450, subd. (e); see also § 7, item 4, with the omission of "defraud.")

Lewis is not challenging the sufficiency of the evidence to support his conviction. Instead, he contends the trial court erred in finding that evidence of his insanity was not admissible to prove he could not have committed arson as defined by section 451. Because we agree with the trial court the evidence of Lewis's mental illness was not offered to show he was either unconscious at the time of the fire or set it accidentally, it was not relevant to whether he willfully and maliciously set the fire in the coffee shop bathroom.

In *People v. Atkins* (2001) 25 Cal.4th 76, 84-86 (*Atkins*), the Supreme Court determined that arson is a general intent crime and evidence of the defendant's voluntary intoxication was inadmissible to prove or disprove his general criminal intent. The

principal basis of the Court's decision was its conclusion that arson entails only the intent to commit the wrongful act that is the basis of the crime, not any specific mental state or purpose to cause the resulting harm. (*Id.* at p. 86.) Thus, evidence of a defendant's impaired mental state at the time is not relevant to whether he or she acted willfully and maliciously within the meaning of section 451. (*Id.* at pp. 90-91; see also Evid. Code, § 28, subd. (a); *People v. Jefferson* (2004) 119 Cal.App.4th 508, 519 [evidence of defendant's mental illness inadmissible to negate the existence of general criminal intent].)

Acknowledging that arson is a general intent crime requiring proof of the willingness to commit the proscribed act, Lewis nonetheless argues the statute also requires proof that when he committed the prohibited act he did so "maliciously." His sole authority in support of this claim is section 450's definition of "maliciously" with respect to section 451 as "a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act." According to Lewis, evidence of his impaired mental state was relevant to show he "was so cognitively deficient that he could not comprehend either what it is to vex, defraud, annoy injure, or do a wrongful act or how the intended act of burning could be a way to express a wish to vex, defraud, annoy, injure or do a wrongful act." Implicit in Lewis's argument is that the term "maliciously," unlike "willfully," requires a showing of an additional specific intent for him to be found guilty of arson.

The meaning of "maliciously" in section 451 as determined by the California Supreme Court does not support Lewis's argument. In *Atkins*, 25 Cal. 4th at p. 85 the Supreme Court explained, "[a]s with 'willfully,' the statutory definition of 'maliciously,' in the context of arson, requires no specific intent." The inclusion of willful and malicious "ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire; "'in short, a fire of incendiary origin.'"'" (*Id.* at p. 88.) The malice requirement ensures that the act is "'done with a design to do an intentional wrongful act . . . without any legal justification, excuse or claim of right.'" (*Ibid.*)

6

In the case of *In re V.V.* (2011) 51 Cal.4th 1020, 1023, 1030 (*V.V.*), the California Supreme Court addressed in greater detail the definition of "malice" or "maliciously" in terms of arson. *V.V.* concerned the sufficiency of evidence of malice where the juvenile court found a brushfire caused by minors throwing lighted firecrackers onto a hillside was unintentional. (*V.V.*, at p. 1025.) After confirming its holding in *Atkins* that the statutory definition of "maliciously" for arson requires no specific intent to commit a further act or achieve a future consequence, the Court explained there are two types of malice derived from the common law: "Malice in fact—defined as "a wish to vex, annoy, or injure" (§ 7, item 4)—consists of actual ill will or intent to injure." (*Id.* at pp. 1027-1028.) The second type of malice is "malice in law—as defined by section 7, item 4 as 'an intent to do a wrongful act, established either by proof or presumption of law.'" (*Id.* at p. 1028.) In determining whether malice, as used in the legal sense, is established for arson, "malice will be presumed or implied from the deliberate and intentional ignition or act of setting a fire without legal justification, excuse or claim of right. (*Id.* at p. 1028.)

The *V.V.* Court concluded the record showed the minors had willfully and maliciously set the hillside fire. By igniting firecrackers and throwing them onto the dry brush, which exploded in flames, the minors willfully and intentionally committed the wrongful act, causing the forest land to be burned. (*V.V., supra*, 51 Cal.4th at p. 1028.) With respect to whether the minors acted maliciously, the Court agreed with the juvenile court the "acts of intentionally igniting and throwing a firecracker amid dry brush on a hillside, although done without intent to cause a fire or other harm, were sufficient to establish the requisite malice for arson." (*Ibid.*)[3]

Applying *Atkins* and *V.V.* here, the acts proscribed by section 451 are "willfully and maliciously setting fire to, or causing to burn, any structure, property or forest land." Because arson is a general intent crime, the People were not required to prove Lewis acted with the additional specific intent to injure or otherwise to achieve a particular aim

---

[3] Although Lewis never cites *In re V.V., supra* 51 Cal.4th 1020 on appeal, his argument echoes Justice Werdegar's dissent. (*Id.* at pp. 1035-1039.)

or consequence. The malice requirement in the statute simply ensures that the charged wrongful act against Lewis was shown to have been deliberate and intentional, rather than accidental, and that the direct, natural and probable consequence of the act was the burning of property. Put differently, the People were required only to establish Lewis purposefully set fire to the artificial plants, under circumstances reasonably likely to have caused the coffee shop to burn.

Once the People had introduced evidence that Lewis willfully and maliciously set a fire in the coffee shop bathroom, Lewis had the opportunity to prove, as an affirmative defense, that he set the fire either unintentionally or with justification or lawful excuse. As the trial court properly determined, the proffered evidence of Lewis's insanity or impaired mental state would have been relevant under the circumstances only if it negated general criminal intent, by proving Lewis was either unconscious at the time of the fire or had set it accidentally. Defense counsel acknowledged the psychiatric report and the testimony of Lewis's father were not being offered to prove either theory. The trial court properly excluded them.

## DISPOSITION

The judgment is affirmed as to Count One and reversed as to Count Two.


ZELON, J.


We concur:


PERLUSS, P. J.


WOODS, J.

8