BLEASE, Acting P. J.,
Dissenting. — I authored the opinion of the court because we are bound by People v. Atkins (2001) 25 Cal.4th 76 [104 Cal.Rptr.2d 738, 18 P.3d 660] (Atkins) and In re V.V. (2011) 51 Cal.4th 1020 [125 Cal.Rptr.3d 421, 252 P.3d 979]. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Ordinarily I would say no more. But because a judge is “bound [but] not gagged” by the superior law I express my dissenting views here. (Sample v. Borg (E.D.Cal. 1987) 675 F.Supp. 574, 578, fn. 13, vacated as moot in Sample v. Borg (9th Circ. 1989) 870 F.2d 563.)
This case is about indirectly setting fire to forestland. The arson statute sets forth three kinds of proscribed acts. (Pen. Code, § 451.)[1] As Atkins recognizes, “the proscribed acts within the statutory definition of arson are to (1) set fire to; (2) bum; or (3) cause to be burned . . . any structure, forest land, or property. (§451.)” (Atkins, supra, 25 Cal.4th at p. 86.) The first two involve directly setting fire to or burning of a structure, forestland, or property. The third involves indirectly causing a structure, forestland, or property to be burned (past tense). As to the proscribed act of setting a fire, the “willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire; ‘ “in short, a fire of incendiary origin.” ’ ” (Id. at p. 88.) Similarly, section 451 requires that the act of willfully and maliciously directly burning a property must be deliberate and intentional.
Atkins distinguishes indirectly causing of a property to be burned. It says willfully and maliciously “causing] to be burned” a property means “the act that, causes” the property to burn. (Atkins, supra, 25 Cal.4th at p. 86; see In re *792 V.V., supra, 51 Cal.4th at p. 1027.) As I will explain, the court thereby splits the mental state for arson in two, intentionally setting fire to or burning a property and negligently causing a property to be burned. This is how the grammatical split, came about.
In Atkins the Court of Appeal reversed the judgment of the trial court that evidence of voluntary intoxication should not have been admitted. The Court of Appeal reasoned that the “intent to set fire to or bum or cause to be burned forest land” is a specific mental state permitting the admission of evidence of voluntary intoxication to show that the defendant lacked the required mental state. (Atkins, supra, 25 Cal.4th at p. 81.) The Supreme Court in Atkins reversed the Court of Appeal on the ground that, pursuant to former section 22, arson is a general intent crime and for that reason evidence of voluntary intoxication is not admissible. (Atkins, at p. 79.)[2]
The Supreme Court could have reversed the Court of Appeal and upheld the judgment of the trial court on the ground the trial court correctly concluded that arson is a general intent crime. (Atkins, supra, 25 Cal.4th at p. 81.) The court did not do that. Instead, it took the puzzling, and to my mind unnecessary, course of redefining the singular act of “causing] to be burned” as the undefined and uncodified “act that causes” a fire. (Id. at p. 86, italics added.) The court thereby redefined arson as a strict liability offense. Without more, the “act that causes” a fire is merely the means by which the fire was initiated. To fill the void between the means and end — the fire — the court inserted an additional element requiring that the fire be the natural and highly probable consequence of the act. ({Id. at p. 89.) This again redefined arson, this time as a species of negligence. (See § 7, subd. 2.) This will be explained in detail in the Discussion, post.
The last step in the transformation of arson is in In re V.V. The court there severed the general-specific intent theory of arson that undergirded Atkins from its basis in former section 22. The court applied the Atkins redefinition of arson to a case that did not involve evidence of alcohol use. This made clear that the redefinition of arson set forth in Atkins does not depend upon People v. Hood (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370] (Hood). (In re V.V., supra, 51 Cal.4th at pp. 1027-1029.) The general-specific doctrine is employed in Hood solely to classify a criminal offense as general or specific for the purpose of determining the admissibility of the voluntary use of alcohol pursuant to former section 22:
My earlier opinions, In re Stonewall F. (1989) 208 Cal.App.3d 1054 [256 Cal.Rptr. 578] (Stonewall F.) and People v. Fabris (1995) 31 Cal.App.4th 685 *793 [37 Cal.Rptr.2d 667] (Fabris), discussed the history and statutory requirements for arson at length and held that the mens rea for arson is the malicious intention to do any of the acts proscribed by section 451, that is, to “willfully and maliciously . . . set[] fire to or bum[] or cause[] to be burned ... [a] structure, forest land, or property.” It is clear from the language of section 451 that the terms “willful” and “malicious” apply to the setting fire to, burning of, or causing to be burned, a structure, forestland, or property and not the means (act) by which the burning is initiated.
The grand jury was instructed on the basis of the standard arson instruction (CALCRIM No. 1515) together with an amendment that provided that petitioner did not have to intend to bum the forestland. The jury was further instmcted with CALCRIM No. 240 that causally linked the act that causes the fire with the resulting fire by means of a natural and probable consequences test. All this will be explained in detail in the Discussion, post.
The jury was thereby misinstructed on the statutory definition of arson, based on a misreading and misapplication of the general-specific doctrine of Hood, supra, 1 Cal.3d 444. It substituted a negligence standard in lieu of the mental state of intention required by section 451. The mistake was predicated upon a misreading of Hood.
It is clear on the facts of this case that Mason did not intend to set fire to forestland, that at most he was reckless and therefore liable for unlawful burning (§ 452), and that the grand jury was wrongly instructed pursuant to Atkins and In re V.V. that arson does not require an intent to bum a forestland.
All of this is detailed in Stonewall F., supra, 208 Cal.App.3d 1054 and Fabris, supra, 31 Cal.App.4th 685 which are premised on a simple application of “willfully” to the proscribed acts defined in section 451 (as further defined in the related statutory definitions). Thus, “ ‘willfully’ ” is defined as the “intent with which an act is done,” the act being an act proscribed by statute. (§ 7, subd. I.)[3] The proscribed acts made criminal by section 451 are correctly defined in Atkins as “to (1) set fire to; (2) bum; or (3) cause to be burned, any structure, forest land, or property.” (Atkins, supra, 25 Cal.4th at p. 86.) Thus, applying the statutory definition of “ ‘willfully’ ” (§ 7, subd. 1) *794 to the proscribed acts results in “the intent with which” (ibid.) the subject property is set fire to or burned or caused to be burned, to wit, the intent to do any of these things.[4]
Neither Atkins nor In re V.V. take this simple grammatical step. They implicitly define the proscribed act to “cause[] to be burned,” (§ 451) without reference to the property that is the subject matter of the burning. This redefined the act as the means by which the causal sequence is initiated that causes the burning of a subject property. This is expressed as the “act that causes” a property to bum and is the act to which the court applies the scienter of willful and malicious. (Atkins, supra, 25 Cal.4th at p. 86; see In re V.V., supra, 51 Cal.4th at p. 1027.)
In this manner, the burning of forestland in Atkins was caused by the act of burning weeds. The burning of the grassland in In re V.V. was caused by the act of throwing firecrackers into the grass, and the burning of a school in Stonewall F. was caused by the act of burning leaves in a schoolyard. Here the burning of the forestland was caused by setting off the firework that defendant threw into the swimming hole. None of these (causal) “acts” is proscribed by section 451.
DISCUSSION
I
Atkins Misreads to Cause to Be Burned (One of the Acts Proscribed by § 451) as the Unproscribed Act That Causes to Be Burned
The judicial construction of a criminal statute requires a font of authority that derives from the language of the statute. “Although the Penal Code commands us to construe its provisions ‘according to the fair import of their terms, with a view to effect its objects and to promote justice’ (Pen. Code, § 4), it is clear the courts cannot go so far as to create an offense by enlarging a statute, by inserting or deleting words, or by giving the terms used false or unusual meanings. (People v. Baker (1968) 69 Cal.2d 44, 50 [69 Cal.Rptr. 595, 442 P.2d 675].) Penal statutes will not be made to reach beyond their plain intent; they include only those offenses coming clearly within the import of their language. (De Mille v. American Fed. of Radio Artists (1947) 31 Cal.2d 139, 156 [187 P.2d 769].) Indeed, ‘Constructive crimes—crimes built up by *795 courts with the aid of inference, implication, and strained interpretation — are repugnant to the spirit and letter of English and American criminal law.’ (Ex parte McNulty (1888) 77 Cal. 164, 168 [19 P. 237].)” (Keeler v. Superior Court (1970) 2 Cal.3d 619, 632 [87 Cal.Rptr. 481, 470 P.2d 617].)
The immediate difficulty with Atkins's construction of the statutory element “causes to be burned” as “the act that causes” a property to burn is that such an act is not an element of section 451. (§451; Atkins, supra, 25 Cal.4th at p. 86.)[5] Atkins fails to note that the acts, which it correctly lists as proscribed (Atkins, at p. 86), are not the causal means by which the act of burning is brought about. Rather, they are the completed and unitary acts of setting fire to or burning or causing to be burned a structure, forestland, or property.[6]
If the “act that causes” a fire is not contained in section 451 as an element of the crime of arson, where did it come from? The answer is somewhat more involved.
II
Hood Applies to Acts Proscribed by Statute; an Act That Causes a Fire Is Not a Proscribed Act
For this statutory reason evidence of alcohol use is admissible only, as section 29.4 says, in a “specific intent” case. (§ 29.4, subd. (b), italics added.) Such evidence is not admissible in a general intent case. Hood, supra, 1 Cal.3d 444, upon which Atkins relies, employed the general-specific intent doctrine solely to determine (i.e., to classify) whether an offense is the kind for which evidence of voluntary alcohol use is admissible. Hood says: “When the [statutory] definition of a crime consists of only the description of a particular act. . . we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant’s intent to do some further act or achieve some additional *796 consequence, the crime is deemed to be one of specific intent.” (Id. at pp. 456-457, italics added.)[7]
“As this passage says, the criteria of specific and general intent apply only to the statutory ‘definition of a crime It is apparent that to determine the category into which to place the intended act, the proscribed act must first be determined by examination of the language of the statute defining the offense.” (Fabris, supra, 31 Cal.App.4th at p. 697.) Atkins at first applies this prescription to arson. “[T]he proscribed acts within the statutory definition of arson are to (1) set fire to; (2) bum; or (3) cause to be burned . . . any stmcture, forest land, or property.” (Atkins, supra, 25 Cal.4th at p. 86, italics added.)
Atkins then turns a wrong comer. It accurately quotes the Hood language (Atkins, supra, 25 Cal.4th at p. 82), then fundamentally misquotes it by reference to a footnote in People v. Davis (1995) 10 Cal.4th 463, 518-519, footnote 15 [41 Cal.Rptr.2d 826, 896 P.2d 119], a death penalty case. Davis misquotes Hood as saying: “ ‘A crime is characterized as a “general intent” crime when the required mental state entails only an intent to do the act that causes the harm; a crime is characterized as a “specific intent” crime when the required mental state entails an intent to cause the resulting harm.’ ” (Atkins, at p. 86, italics added.)
In this manner Atkins created a new element of arson, an act not contained in the language of section 451. It redefined the proscribed act of “causing] to be burned” as the “act that” causes the burning. (Atkins, supra, 25 Cal.4th at p. 86.) It premised this reconstruction on the third of the acts actually proscribed in section 451, to “cause[] to be burned.” Atkins says: “This interpretation is manifest from the fact that the statute is implicated if a person ‘causes to be burned . . . any structure, forest land, or property.’ ” (Atkins, at p. 86.) Atkins thus reads “causes to be burned” as the “act that causes” the burning.
The misquotation completely changes the meaning of section 451. The “act that causes” the harm becomes a proscribed act — the means by which the burning is caused — and the burning, the act actually proscribed by section 451, becomes the harm that is caused by the act of causing. (Atkins, supra, 25 Cal.4th at p. 86.) Atkins concludes: “[T]he intent requirement for arson [thus] fits within the Hood definition of general intent, i.e., the description of the proscribed act fails to refer to an intent to do a further act or achieve a future *797 consequence.” (Ibid.) In this fashion Atkins has performed major grammatical surgery. It has used a misquotation of the general-specific intent requirements of Hood, which is employed in Hood solely to classify the crimes for which evidence of alcohol use may be admitted, as a template by which to redefine the crime itself. It applies the statutory scienter for arson — -the willful mental state — to the means by which the burning is brought about. The mental state then becomes the willful means which initiates the chain of causation leading to a burning of a relevant structure and that requires a causal element linking the means to the result.[8]
It is a puzzle why Atkins chose this linguistic route to the classification of arson as a general intent crime since section 451 is a general intent crime on its face. Hood defines a general intent as an intent to do a statutorily proscribed act A without the intent to do a further act or consequence B. (Hood, supra, 1 Cal.3d at pp. 456-457.) Since the acts proscribed by section 451 are all acts of burning a structure, forestland, or property, applying Hood to section 451 shows “[t]here is no reference ... to an intent to do a further act or achieve a consequence beyond the [proscribed] ‘acts’ [of burning] there defined.” (Fabris, supra, 31 Cal.App.4th at p. 697, italics added.) For this reason, applying Hood to the statutory definition of arson simply shows that arson is a general intent offense, the intent to “set[] fire to or bum[] or cause[] to be burned” a structure, forestland, or property without an intent to do or cause any further act or consequence. (§ 451.)[9] Further, “ ‘willfully’ ” is defined to “appl[y] to the intent with which an act is done or omitted” and not to a further intent to injure. (§ 7, subd. 1.)
Ill
The History of the Arson Law Shows the Mens Rea of Section 451 to Be the Intentional Burning of a Property
The history of the arson statutes shows that the Legislature repealed the former statutory requirement that a defendant, in intentionally setting a fire to a property, must further intend to destroy the property burned. At the same time it retained the proscribed act of intentional burning and the harm (scorching or charring) that defines burning. (People v. Haggerty (1873) 46 Cal. 354 (Haggerty).) By that change the definition of arson retained the mens rea as the intentional burning of a structure without the further intent to bum down or destroy the stmcture.
*798 Since in this form arson constituted, and still constitutes, the singular act of intentional burning of a structure without an intent to achieve a further consequence, it was and is properly classified as a general intent offense. Because Atkins created a new proscribed act — the means (act) by which the property is caused to be burned — it turned the existing proscribed act of burning into the consequence of an act nowhere defined in section 451 (the means).
Atkins does recite the correct history of the arson law as support for the claim that arson is a general intent crime. Atkins says that initially arson was defined as “ ‘the willful and malicious burning of a building, with [the specific] intent to destroy it.’ [Citations.] . . . [¶] When arson was recodified in 1929, [the prior] section . . . was repealed [citation], and the new primary arson statutes [citations] dropped the specific intent requirement, leaving ‘wilfully and maliciously’ as the only mental element.” (Atkins, supra, 25 Cal.4th at p. 87.) Atkins further says that when the arson statute was recodified in 1979, “[t]he . . . language in [the] former sections . . . ‘Any person who wilfully and maliciously sets fire to or burns or causes to be burned . . . ,’ [a defined property] was retained . . . .” (Ibid.) As a consequence of this legislative history the terms “bum[]” and cause to be “burned” in section 451 have the same meaning as the term “burning” in the 1872 statute, and that we know is not equivalent to the destruction of the property burned.
Arson has been classified as a general intent crime since the statute was recodified in 1929. (Atkins, supra, 25 Cal.4th at p. 87.) “Language that typically denotes specific intent crimes, such as ‘with the intent’ to achieve or ‘for the purpose of’ achieving some further act, is absent from section 451.” (Id. at p. 86, italics added.) Since there is no specific intent language in the current definition of arson there is no reason to read the language to bar a specific intent and no reason to read “causes to be burned” as specific intent language. Atkins' s redefinition of “causes to be burned” as the “act that causes” the burning is what creates the specific intent problem. As a consequence the Supreme Court, by its construction, created a nonexistent specific intent problem which it then unnecessarily resolved by interpreting “causes to be burned” as the act that causes the burning.
This is made abundantly clear by the history of the arson statutes set out in Stonewall F. The law of 1850 provided, in terms that exist in the present section 451, “that it was arson for any person to ‘wilfully and maliciously burn, or cause to be burned’ specified kinds of (habitable) structures. (Stats. 1850, ch. 99, § 56, pp. 234-235; see Bolton, Arson in California (1949) 22 So.Cal.L.Rev. 221; Bolton, Arson in California: Part II (1962) 35 So.Cal.L.Rev. 375.)” (Stonewall F., supra, 208 Cal.App.3d at p. 1062.) At *799 common law the word “ ‘ “bum” ’ ” meant “ ‘to consume by fire . . . [a]nd the burning of any part, however small, completes the offense, the same as of the whole.’ ” (Haggerty, supra, 46 Cal. at p. 355.) In Haggerty “[it] was proved that a wooden partition in the building, and annexed to it, was charred, and in one place burned through. This was a sufficient burning to constitute arson . . . .” (People v. Simpson (1875) 50 Cal. 304, 306, citing Haggerty, supra, 46 Cal. 354.)
Atkins had no reason to construct a general intent crime out of section 451 since it already was a general intent crime.
IV
The Harm of Scorching or Charring a Property Is Integral to the Proscribed Acts of Setting Fire to or Burning or Causing to Be Burned a Property
The Atkins court seems confused about the harm to which section 451 is directed, which explains why it is confused about what constitutes the consequence of a proscribed act. A specific intent refers to an intent to cause a further consequence of a proscribed act. But Atkins implicitly identifies the harms proscribed by section 451 as the consequence of the act of initiating a causal chain leading to the setting of a fire. Such an initiating act is nowhere defined as proscribed in the section. It is tme that the acts identified as proscribed acts in section 451 do include a harm integral to the act, to wit, scorching or charring a property. But that harm is not the harm identified in section 451 as the consequence of a proscribed act. It is a harm integral to the proscribed act and as such must be the object of the defendant’s intent.
V
The Phrase “That Causes” Is Used in the Arson Statute Only to Aggravate the Penalties for Arson
The significant absence of the language “that causes” from the definition of arson is shown by the contrasting use of “that causes” to define the conditions for enhancing the penalties for specified harms caused by an arson. Thus, section 451 enhances the penalties for an “[a]rson that causes” great bodily injury (§ 451, subd. (a)) and for an “[a]rson that causes” an inhabited structure to bum (§451, subd. (b)). To similarly extend “that causes” language to the definition of arson, without more, rewrites section 451 to make the perpetrator of the arson strictly liable for the act (means) that initiated the causal chain leading to the burning of a structure.
*800 VI
To Remedy the Strict Liability Consequence of Its Redefinition, Atkins Imported a Negligence Test
The Atkins court’s misreading left section 451 without a statutory mens rea applicable to the consequence of the “act that causes” the burning of the structure, forestland, or property. Without a mens rea, the causal relation between act and consequence is one of strict liability, another way of stating the absence of a mens rea.
The redefinition of arson as a strict liability offense is intolerable as a matter of policy since arson is outside the range of acceptable strict liability offenses. “ ‘[W]hile strict-liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements [citation], the limited circumstances in which Congress has created and this Court has recognized such offenses, [citations], attest to their generally disfavored status.’ [Citation.]” (People v. Simon (1995) 9 Cal.4th 493, 519-520 [37 Cal.Rptr.2d 278, 886 P.2d 1271].)
Apparently, in an effort to remedy the strict liability consequence of its definition of arson, Atkins inserted a new element between the act (means) of causation and the consequent burning of a relevant property, to wit, the “general [criminal] intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.” (Atkins, supra, 25 Cal.4th at p. 89; see § 20.)
There are two things wrong with the construction. First, the “act of setting on fire” a structure, forestland, or property, the act actually proscribed by section 451, is not the means by which the fire is caused. Second, the “direct, natural, and highly probable consequences” test is not contained in the language of section 451.
The only case directly cited as support for the test in Atkins is People v. Fry (1993) 19 Cal.App.4th 1334, 1339 [24 Cal.Rptr.2d 43] (Fry). Atkins correctly describes Fry as a proximate cause case. “[T]he defendant in Fry did not directly set fire to the relevant structure [a carport]. In Fry, the defendant, while drunk and angry at his girlfriend, set fire to four vehicles, and the fire in one vehicle damaged the carport it was parked in. He was convicted of one count of arson of a structure and four counts of arson of a vehicle. Because there was substantial evidence that he willfully and maliciously set fire to a car, and his conduct actually and proximately caused the carport to be burned, *801 Fry held there was substantial evidence to support the conviction for arson of a structure.” (Atkins, supra, 25 Cal.4th at pp. 83-84, fn. 3.)
In Fry’s usage the natural and probable consequences doctrine does not define a mens rea. It defines the causal relationship between the completed act of arson of a vehicle and the consequent burning of the carport in which the vehicle was parked. It does not define a mental state. The" difference between causation and a mental state lies in the function performed by the natural and probable consequences doctrine. If it is used to establish culpability it is a negligence doctrine. If it is used to refer to the further consequences of culpable conduct, it is a causal doctrine. Thus, in Fry the arson occurred in the setting fire to the cars in the carport and that caused the fire in the carport. It did not establish a further arson, contrary to Atkins, but merely caused the fire to the carport within which the burned cars were located.
By contrast the phrase “direct, natural, and highly probable consequences,” as used by Atkins, defines the mens rea of unreasonable risk taking, the key element in negligence, as defined in section 7, subdivision 2. “ ‘[Negligence’ . . . import[s] a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns.” (Ibid.) Thus, from a causal doctrine Atkins has derived a negligence doctrine. This is the form in which the grand jury was instructed as a modification of the standard arson instruction. A natural and probable consequence of an act is a form of negligence where it is used to assign culpability for risk. Negligence is defined in the Penal Code (§ 7, subd. 2) and applies throughout the Penal Code “unless otherwise apparent from the context.” (§ 7.)[10] Since the “natural, and highly probable consequences” test In Atkins contains the core definition of negligence in section 7, subdivision 2, it functions as a species of negligence, an objective form of risk taking. In this manner Atkins has shifted the act made culpable from the intentional act of causing a fire to specified property to the negligent act of initiating a fire. This rendered arson the preferred criminal charge since negligence, measured objectively, is manifestly easier to prove than recklessness, measured subjectively.
CONCLUSION
The public will not understand that the single offense of arson has been split into two offenses, measured by their scienter and that the result is the *802 grammatical transformation of the indirect burning of a property from an intent crime to a negligence offense. Nor have the cases. (See Fabris, supra, 31 Cal.App.4th at pp. 696-697.) To the public, arson is the intentional, incendiary act of causing a fire to property. But Atkins and In re V.V. treat the perpetrator of an indirect arson as an arsonist no matter that the fire was started negligently. (Atkins, supra, 25 Cal.4th at p. 88.) The Atkins court’s construction of section 451, which does not appear in the language of section 451, radically transforms the mental state for arson from the intentional burning of a relevant structure to the negligent burning of the structure, thereby making the proof of arson, the offense carrying the greater penalty, easier than the proof of unlawful burning.
Petitioner’s petition for review by the Supreme Court was denied February 24, 2016, S231654.
Werdegar, J., was of the opinion that the petition should be granted.

 A reference to a section is to the Penal Code unless otherwise apparent from the context.

 As relevant here, former section 22, subdivision (b) provided, and section 29.4, subdivision (b) now provides, that “[e]vidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent. . . .” (Italics added.)

 The definition does not include the further intent “to injure another” (§ 7, subd. 1), and thus rules out a further intent. Accordingly, it must be classified under Hood as a general intent crime.

 Notwithstanding, Stonewall F. and Fabris were disapproved without analysis in Atkins “[t]o the extent that [they] ... are inconsistent with [its] opinion.” (Atkins, supra, 25 Cal.4th at p. 90, fn. 5.)

 The phrase is used in section 451, subdivisions (a) and (b) to increase the penalties for an arson “that causes” an inhabited structure or property to burn (§451, subd. (b)) or an arson “that causes” bodily injury (§ 451, subd. (a)).

 The role of a proscribed act can be described as the analogue of the distinction between material and evidentiary facts in the law of summary judgments. “Material facts are facts to be proved to establish a cause of action. . . . Evidentiary facts are facts by which the material facts are proved.” (Carteen v. Koivumaki (2014) 227 Cal.App.4th 879, 884, fn. 6 [174 Cal.Rptr.3d 339], citations omitted.) The act of causing to be burned a structure, forestland, or property is a material (proscribed) fact to be proved. The means by which that is done is evidence whether the act of causing to be burned is willful.

 The issue in Atkins was evidentiary, whether evidence of the voluntary use of alcohol was admissible as a defense to the intent to burn the forestland. The statutory authority for admission of the evidence is found in section 29.4 (former § 22). (Hood, supra, 1 Cal.3d at p. 457.)

 Atkins says: “Thus, there must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.” (Atkins, supra, 25 Cal.4th at p. 89.)

 A further “intent to violate law, or to injure another, or to acquire any advantage” is ruled out by the definition of “ ‘willfully’ ” (§ 7, subd. 1) unless “otherwise apparent from the [statutory] context.” (§ 7.)

 “Every assessment of negligence implies a standard by which the conduct of the individual is judged.” (Williams, Criminal Law (2d ed. 1961) § 36, p. 101.) The standard, as set forth in section 7, is in subdivision 2. Subdivision 2 provides: “The words ‘neglect,’ ‘negligence,’ ‘negligent,’ and ‘negligently’ import a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns.”