Filed 2/22/24  In re J.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | C098401 |
| THE PEOPLE, | (Super. Ct. No. JV141426) |
| Plaintiff and Respondent, | |
| v. | |
| J.M., | |
| Defendant and Appellant. | |

This is an appeal from the juvenile court's finding that the minor J.M. committed lewd and lascivious acts upon a child under 14 by force or fear, in violation of Penal Code section 288, subdivision (b)(1).  On appeal, J.M. argues the finding was not supported by sufficient evidence because the victim's testimony was inherently improbable.  We affirm.

1

## BACKGROUND

On September 24, 2021, the Sacramento County District Attorney filed a petition alleging that J.M. (the minor), committed lewd and lascivious acts against C.D., a 10-year-old victim (the victim), in violation of Penal Code section 288, subdivision (b)(1). The victim was friends with the minor's stepbrother, Z.B., who lived in the minor's home.[1]  The victim and Z.B. met when they were in the same class at school.

Sometime between February 14, 2017, and June 2017—when the minor was 13 years old—the victim's mother dropped him off at the minor's home for a sleepover.  The victim, the minor, and Z.B. played video games and ate dinner, before going upstairs to the bedroom that Z.B. and the minor shared.  Upstairs, Z.B. and the minor began to smoke marijuana, blowing it in the victim's face, despite him asking them to stop.  After shutting the bedroom door, the minor and Z.B. tried to convince the victim to have sex with them.  The victim described the minor's behavior as "threatening" and "aggressive," causing him to eventually give in.

Z.B. and the minor told the victim to get on the ground, where Z.B. removed the victim's clothes.  They threatened to "beat the crap" out of the victim and kill him and his mom if he ever told anyone.  Then, the minor sat on the bed, watching as Z.B. sodomized the victim.  About three-quarters of the way through, Z.B. told the minor to go in the closet and the victim would be there in a minute.  After 20 or 25 minutes, Z.B. ejaculated in the victim's anus.  Feeling sad, scared, and humiliated, the victim used a shirt to wipe himself off.  Z.B. then pushed the victim into the closet with the minor. The victim described the closet as average size—about three feet deep and five or six feet wide—with shirts on the floor.  Once inside the closet, the minor pushed the victim's head down and held his arms, forcing the victim to orally copulate him.

---

[1]  Z.B. was 12 or 13 years old at the time of the alleged offense.  His exact age is unknown because the exact date of the offense is unknown.

The three boys then went downstairs to play video games. However, when they got downstairs, Z.B. pushed the victim's head down, forcing the victim to have oral sex with him, while the minor masturbated on the couch next to them. The victim tried to take Z.B.'s phone to call his mother, but Z.B. punched the victim to the ground, where three of the family dogs scratched at his back. Then, the boys went to sleep.

After the sleepover, the victim told his mother that the other boys were smoking marijuana and wouldn't let him call her. The victim also asked his mother not to tell anyone because he feared retaliation. However, he did not disclose the sexual assault until about three years later, when he told his mother about the events. She did not immediately report it to the police because the victim "begged" her not to, as he felt threatened and embarrassed. About six months later, she reported the incident to the police, with the victim's permission.

On September 24, 2021, the court issued a warrant for the minor's arrest. The minor was living in Oklahoma when he discovered the warrant and turned himself in. Beginning February 15, 2023, the juvenile court held a contested jurisdiction hearing, during which the victim testified to the aforementioned facts. Detective Robert Ranum, who interviewed the victim, testified that he found the victim credible. He observed the victim in the detective bureau parking lot before an interview. The victim was crying, holding on to his mother, and "seemed like he didn't want to come into" the building. Detective Ranum also opined that delayed disclosures—from six months to six years after an incident—are the "norm" in child sexual assault cases.

J.B.—the longtime girlfriend of the minor's father, and the minor's self-proclaimed stepmother—was home during the sleepover. She testified that, at the time of the incident, the minor's bedroom door was missing due to damage from one of their dogs. She also testified four additional people were living in her home and sleeping in the living room at the time. She explained that these people stored their belongings in the minor's bedroom closet upstairs, making the closet extremely full. J.B. also claimed that

3

if anything had happened that night she would have known because her dogs would wake her with barking whenever someone moved or made noise in the house.

Following this hearing, the court sustained the petition against the minor, finding: "The Court believes [the victim]'s story for a number of reasons. First, [the victim]'s description of the sexual attacks, with all of its detail, has the ring of truth.

"Second, [the victim]'s description of these events did not materially vary over two afternoons of direct examination and cross-examination by counsel for [Z.B.] and for [the minor].

"Third, [the victim]'s testimony was consistent with the statement he gave to the lead detective one and one-half years before trial, July 13, 2021, and largely consistent with his brief interview by a patrol officer six months before that on January 14, 2021.

"Fourth, and most significantly, [the victim] had no motive to make up this narrative. [The victim] did not disclose the incident to anyone for approximately three years. As Detective Ranum explained, victims of sexual assault rarely make disclosures immediately after the assault, and may delay disclosure for up to six years. Here, in approximately July 2020, three years after the incident, [the victim] told his mother what had happened. If [the victim] were going to reveal this to anyone, his mother would be the safest person, and so he made disclosure to her, crying as he did so, and then continued to disclose to law enforcement, crying and reluctantly, and then at a public trial in front of the alleged perpetrators.

"[The victim] testified that he was humiliated, disgusted, terrified and angry as a result of the sexual assaults, and the disclosure brought him additional pain and humiliation, now of a public nature. In this light, it is clear to the Court that [the victim] had no motivation to make up this disclosure."

Additionally, the court found that "the testimony of [J.B.] was not credible," primarily because she provided an extremely detailed account of a supposedly unremarkable sleepover that occurred more than five and one-half years ago; the court

4

found her "power of recall [] hard to believe."  The court thus found beyond a reasonable doubt that the minor aided and abetted Z.B. in committing forcible sodomy as alleged in count one, and committed forcible oral copulation as alleged in count two.

The minor filed a timely notice of appeal.

## DISCUSSION

When considering a claim of insufficient evidence, we " ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence." ' " (*People v. Clements* (2022) 75 Cal.App.5th 276, 298, quoting *People v. San Nicolas* (2004) 34 Cal.4th 614, 657-658.)  " 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the [fact finder's] verdict.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142, quoting *People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  When reviewing for substantial evidence, we do not reevaluate witness credibility because "[r]esolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181; see also *People v. Ramirez* (2002) 13 Cal.5th 997, 1118.)  The same standard applies in juvenile cases. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)  Under this standard, the testimony of a single witness is sufficient to support a finding, unless the testimony is physically impossible or inherently improbable.  (*Young*, at p. 1181.)

Penal Code section 288, subdivision (b)(1) prohibits lewd acts on a child under the age of 14, by use of force or fear of bodily injury.  To sustain this charge, the state must prove (1) the minor willfully touched a child's body or caused the child to touch their own body or someone else's; (2) using force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the child or someone else; (3) with intent of arousing, appealing to, or gratifying his lust, passions, or sexual desires, and; (4) the child victim was under 14 years old.  (CALCRIM No. 1111.)

5

Here, the victim's testimony alone was sufficient to support each element of the alleged offenses.  (*People v. Young, supra*, 34 Cal.4th at p. 1181.)  The victim provided substantial evidence of force, fear, or duress, when he testified that the minor participated in the pre-assault coercion and threats.  The victim also said he was "very scared" and that he "really, really wanted to scream for help, but they also had knives and stuff in the room, so I was also scared that they might kill me . . . they did threaten to kill me and my mother if I ever mentioned it to anyone."  After threatening the victim until he "gave in," the minor stood by, watching as Z.B. sodomized the victim, supporting the court's finding that the minor aided and abetted Z.B.'s act.  Then the minor forced the victim to touch him for sexual purposes when he held the victim's arms and pushed his head down, forcing him to perform oral sex until the minor ejaculated.  Furthermore, the testimony of the victim's mother and Detective Ranum, to whom the victim recounted similar versions of the events, also support his credibility.

Nevertheless, the minor argues the victim's "testimony concerning the marijuana, the closet, the sexual activity downstairs, the dog attack, Z.B.'s door and use of a cell phone was inherently improbable."  However, the kind of testimony challenged in this case, " ' "which merely discloses unusual circumstances[,] does not come within [the inherently improbable] category.  [Citation.]" ' " (*People v. Maciel* (2013) 57 Cal.4th 482, 519.)  For example, the minor argues the sexual attacks in the living room "could not have happened, because the parents could have gone downstairs at any time."  The fact that the parents could have gone downstairs, however, does not render the victim's testimony either impossible or inherently improbable.

Furthermore, "[t]he determination of inherent improbability must be made without resort to inference or deduction."  (*People v. Ennis* (2010) 190 Cal.App.4th 721, 725.)  Here, the alleged improbabilities in the victim's testimony only appear upon comparison with J.B.'s testimony, which the juvenile court expressly found not credible.  For instance, it is neither inherently improbable nor physically impossible that two young

6

boys could fit in a closet, as the victim testified; any improbability in this testimony arises only when compared with J.B.'s testimony that the closet was full. The minor's argument essentially asks us to reevaluate and make inferences about the credibility of a witness that the juvenile court reasonably found credible. In *Ennis*, the court rejected a very similar argument. The defendant in that case claimed not that "it would [have been] impossible for him to have committed the acts of sexual abuse attributed to him, but instead suggest[ed] the [fact finder] should have inferred or deduced from . . . the other evidence admitted in the case, that each of these witnesses was lying." (*Ennis*, at p. 730.) The appellate court affirmed, reasoning that the defendant's " 'inferences and deductions' " argument was improper because the fact finder has the sole discretion to determine witness credibility. (*Ibid.*)

So, too, in this case. The minor does not argue it was impossible that he committed the alleged sexual assaults; instead, he argues the victim's testimony is false when compared with J.B.'s. Inherent improbability "cannot be established by comparing the challenged testimony to other evidence in the case." (*People v. Ennis, supra*, 190 Cal.App.4th at p. 725.) Thus, we do not find the victim's testimony inherently improbable. Therefore, the victim's testimony is sufficient evidence to sustain the petition. (*People v. Penunuri, supra*, 5 Cal.5th at p. 142.)

## DISPOSTION

The juvenile court's order sustaining the petition is affirmed.

_____/s/_____
EARL, P. J.

We concur:

_____/s/_____
ROBIE, J.

_____/s/_____
MESIWALA, J.