Filed 10/23/24

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>DOUGLAS ROYAL,<br><br>    Defendant and Appellant. | A166139<br><br>(Contra Costa County Super.<br>Ct. No. 05001914258) |

A jury found defendant Douglas Royal guilty of manufacturing a controlled substance (in this case, "butane honey oil," a form of concentrated cannabis) and arson of an inhabited structure.

On appeal, defendant does not dispute that he manufactured butane honey oil in his own home, using a process that released butane gas, and that a fire erupted when the butane gas ignited, but he argues his conduct did not amount to arson because he did not intentionally set a fire. He contends the prosecution failed to present substantial evidence to support a conviction of arson, and he raises various claims of instructional error. We affirm. [1]

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part C.3. of the Discussion.

[1] In the unpublished portion of this opinion (part C.3.), we conclude that the trial judge's response to a jury question, to which defense counsel did not object, could not in any event have prejudiced defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

Around 3:00 a.m. on July 28, 2018, Kevin Brown, a fire investigator with the Contra Costa County Fire Protection District, responded to a report of a structure fire on Camino Vinedo in Martinez. When he arrived at the scene, Brown found several fire trucks, crews fighting the fire, and a medic unit treating defendant for burn injuries. The fire involved the entire second story of defendant's house; the roof had collapsed, and the walls were unstable.

Brown spoke briefly with defendant, who told him he had been asleep in the second-floor bedroom and there was an explosion and fire everywhere. Defendant was wearing a t-shirt, shorts, socks, and laced up work boots, which Brown found odd given that defendant said he was asleep when the explosion occurred. Defendant sustained burn injuries to his right leg, his arms, and the right side of his face.

A subsequent search of defendant's house revealed items commonly used in the manufacture of concentrated cannabis.

The Contra Costa County District Attorney charged defendant with manufacturing a controlled substance (Health & Saf. Code, § 11379.6, subd. (a); count 1) and arson of an inhabited structure (Pen. Code,[2] § 451, subd. (b); count 2). A five-day jury trial was conducted in June 2022.

*The Prosecution's Case*

Contra Costa County Sheriff's Detective Jon Kirkham conducted a search of defendant's house on August 8, 2018. The second-floor bedroom was full of charred debris. In this room, Kirkham found mason jars labeled

---

[2] Undesignated statutory references are to the Penal Code.

with common names for marijuana strains,[3] butane canisters, and a "PVC pipe with one side capped and the other side had another end closed with a filter inside with a green leafy substance believed to be marijuana."[4]

Kirkham testified as an expert in the manufacture of concentrated cannabis. He explained that butane honey oil refers to concentrated cannabis that is derived with the use of butane. There are two ways to make butane honey oil, "closed loop" and "open blast." In a "closed loop operation," butane is poured into a device, usually a cylinder, packed with marijuana. A "chemical reaction occurs, which then yields . . . the THC oils" that are collected, and in "the closed system, the gas of butane gets pumped out into a collection reserve and then filtered through so it never leaves the canister." An "open blast . . . lab is the same process except all you are doing is pouring the butane . . . and then letting it vent naturally."

Based on the PVC pipe, butane, and marijuana found in defendant's house, Kirkham opined that defendant was making butane honey oil "with [a]n open-blast lab."

Kirkham explained that an open blast lab is dangerous because "[i]f it's done in a room butane can settle, and . . . butane itself is highly flammable." "So simply just unplugging a lamp and you could have a spark and that can ignite butane." "Any type of flammable, whether it's a candle, whether it's a lighter, anything of that nature could—with a fling can create an ignition point."

Fire investigator Brown described arriving at the scene of the fire on July 28, 2018, and testified as an expert in fire investigations and butane

---

[3] One mason jar, for example, was labeled "purple nurple."

[4] A criminalist testified the plant material collected from the PVC pipe tested positive for marijuana.

honey oil fire investigations. Brown participated in the search of the house on August 8; at that time, he found a sooty glass pipe with a broken end. Based on his experience, Brown believed the broken glass pipe could be used to smoke honey oil, and other items found in the house were "consistent with the manufacturing of honey oil." After examining the pattern of the fire damage and considering defendant's injuries, Brown opined, "this was a flash fire involving the ignition of butane."

Fire investigation consultant Keith Warner, who was hired by an insurance adjuster to investigate the fire, also testified as an expert in fire investigations and fires by butane honey oil. Inspecting outside defendant's house, he found that the electricity and gas had been disconnected. Inside the house, the second-floor bedroom contained "extensive contents and debris," including a bed that had to be "unearth[ed] from roof material." Defendant told Warner he had lighted two tapered candles at the foot of the bed before he went to sleep the night of the fire, but Warner found no evidence of candles or candle wax at the foot of the bed. However, he did find two round candles sitting on the floor about six feet west of the bed as well as butane canisters and a PVC pipe suggesting a butane honey oil operation.

Warner concluded the manufacture of butane honey oil was the most probable cause of the fire. The burn pattern on the floor near the candles "was indicative of a butane gas which is heavier than air accumulating, burning and kind of flash burning that plywood floor." He explained that a source of ignition could be "[a]nything that sustains enough heat to cause combustion," such as an electrical spark, lighter, open flame, or a magnifying glass with sun reflecting through it. In this case, Warner "determined it was more probable than not the butane ignit[ed] due to an open flame source," as there was no evidence of any other explanation. Defendant's injuries to his

4

leg were also "indicative of being in close proximity to that heavier-than-air-fuel," butane. In his report to the insurer, Warner concluded the fire was "accidental."

*The Defense Case*

Defendant testified on his own behalf. In 2008, there was a fire at his house on Camino Vinedo that required extensive construction, and defendant was doing the work himself. In 2018, defendant had another primary residence, but he also stayed in the house on Camino Vinedo, although it had no electricity and no kitchen or bathroom.

Defendant testified that the day before the fire, he worked all day moving concrete in big chunks and taking it to recyclers. He went to his house and lit a candle on the floor and two candles on a table. He sat down on the bed and, without intending to, fell asleep around midnight with his clothes and shoes on. Later, "[t]he fire woke [him] up." Defendant thought it was obvious the candles started the fire. He testified he did not put out the candles before he fell asleep, "Because I just passed out asleep from being exhausted. I wasn't even planning on even staying there."

Defendant maintained that he had not seen the PVC pipe before the fire and that he "didn't even know what [butane honey oil] was until [he] was charged with making it." He testified, "[I]t's impossible what they're saying could have happened. Because how do you release gas and let it fall to the floor when you got candles going? . . . [I]t would have blown up immediately. Any fool knows that."

*Jury Verdict and Sentence*

The jury found defendant guilty of manufacturing a controlled substance (count 1) and arson of an inhabited structure (count 2). The trial

5

court suspended imposition of sentence, placed defendant on formal probation for two years, and ordered he serve 300 days in county jail.

## DISCUSSION

Defendant contends the trial court erred in denying his motion for acquittal as to the arson count; the jury instruction on arson was incorrect and incomplete; and the trial court erred in refusing to give an instruction on accident and in misstating the law in response to a jury question. Because defendant's appellate claims all depend on what conduct and mental state are required for arson, we begin with a discussion of the arson statutes and case law.

A. *Relevant Law*

1. <u>Arson</u>

Under section 451, subdivision (a), "[a] person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property."

Arson is a general intent crime. (*People v. Atkins* (2001) 25 Cal.4th 76, 84 (*Atkins*).) Although the statute requires an act of "set[ting] fire to," "burn[ing]," or "caus[ing] to be burned," it "does not require an additional specific intent to burn a 'structure, forest land, or property.' " (*Id*. at p. 86.) In *Atkins*, our Supreme Court explained section 451 "requires only an intent to do the act that causes the harm. This interpretation is manifest from the fact that the statute is implicated if a person 'causes to be burned . . . any structure, forest land, or property.' " (*Ibid*.)

To qualify as arson, the act of setting fire, burning, or causing to be burned must be done "willfully" and "maliciously." (§ 451, subd. (a).)

6

In *Atkins*, *supra*, 25 Cal.4th 76, our high court explained the term "willfully" as used in the Penal Code " 'require[s] only that the illegal act or omission occur "intentionally," without regard to motive or ignorance of the act's prohibited character.' [Citation.] " 'Willfully implies no evil intent; " 'it implies that the person knows what he is doing, intends to do what he is doing and is a free agent.' " ' " (*Atkins*, *supra*, 25 Cal.4th at p. 85; see § 7, subd. (b)(1) [" 'Willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, to injure another, or to acquire any advantage"].)

" 'Maliciously,' " for purposes of arson, is defined by statute as "import[ing] [(1)] a wish to vex, defraud, annoy, or injure another person, or [(2)] an intent to do a wrongful act, established either by proof or presumption of law." (§ 450, subd. (e) (§ 450(e)).)[5] Thus, malice may be proved in two ways, referred to as "[m]alice in fact" and "[m]alice in law." (*In re V.V.* (2011) 51 Cal.4th 1020, 1028 (*V.V.*).) Malice in fact, "consist[ing] of actual ill will or intent to injure" (*ibid.*), is found in the first part of section 450's definition of "maliciously," that is, "a wish to vex, defraud, annoy, or injure another person" (§ 450(e)). Malice in law is the second part of the definition, "an intent to do a wrongful act, established either by proof or presumption of law" (*ibid.*). (*V.V.*, *supra*, at p. 1028.)

---

[5] The definition of malice for arson in section 450(e) is similar to the general definition of malice in the Penal Code at section 7, subdivision (b)(4), which provides, " 'Malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." The only difference between the two statutes is that for arson a wish to "defraud" is included in the definition of " '[m]aliciously.' " (§ 450(e).)

For malice in law, it is generally the case that committing a crime is a "wrongful act." (See *V.V.*, *supra*, 51 Cal.4th at p. 1035 (dis. opn. of Werdegar, J.) [observing that if minors violated an ordinance prohibiting the lighting of fireworks and that caused a fire, the violation "would certainly have been 'wrongful,' and thus malicious" for purposes of arson]; cf. *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1282 (*Kurtenbach*) [defendant's commission of the wrongful act of arson of his own house established malice in law for another crime requiring malice, vandalism, where the "wrongful act [of arson] collaterally damaged the neighbors' house, satisfying the definition of vandalism"].)

In addition, our high court has held that malice in law (that is, "intent to do a wrongful act") may be "presumed or implied from the deliberate and intentional ignition or act of setting a fire without a legal justification, excuse, or claim of right." (*V.V.*, *supra*, 51 Cal.4th at p. 1028.) By way of explanation, the court noted, " ' "An intentional act creating an *obvious fire hazard* . . . done without justification . . . would certainly be malicious." ' " (*Ibid.*, quoting *U.S. v. Doe* (9th Cir. 1998) 136 F.3d 631, 635, fn. 4.) This type of malice in law may be established by showing "a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (*V.V.* at p. 1029.)

2.    Unlawfully Causing a Fire

When a person "sets fire to or burns or causes to be burned, any structure, forest land or property" (the same acts proscribed in section 451) but does so "recklessly"[6] and not intentionally and maliciously, the person is

---

[6] " 'Recklessly' " here "means a person is aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire

8

guilty of the lesser offense of unlawfully causing a fire under section 452. (See *Atkins, supra,* 25 Cal.4th at pp. 87–88 [discussing the difference between the two offenses].)  In *Atkins,* our high court observed, "[T]he offense of unlawfully causing a fire covers reckless accidents or unintentional fires, which, by definition, is committed by a person who is 'aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property.' (§§ 450, subd. (f), 452.)  For example, such reckless accidents or unintentional fires may include those caused by a person who recklessly lights a match near highly combustible materials."  (*Id.* at p. 89.)

    3.    <u>*V.V.*</u>

We now consider *V.V.,* a case that illustrates these legal principles and which the parties rely on extensively in this appeal.  In *V.V.,* a juvenile court found two minors committed arson where one minor lit a firecracker (sometimes referred to as a cherry bomb), the other minor threw it onto a brush-covered hillside, and the firecracker exploded causing a five-acre brush fire.  (*V.V., supra,* 51 Cal.4th at pp. 1023–1024.)  The court found neither minor intended to set the hill on fire, and, in fact, they were " 'trying to throw the thing into a patch of green or into a cement area.  So they're trying to avoid setting the hill on fire.' "  (*Id.* at p. 1025.)  But the juvenile court found "the requisite mental state for arson was met" because the minors "intentionally ignited and threw the firecracker that caused the fire,"

---

to, burn, or cause to burn a structure, forest land, or property.  The risk shall be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.  A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto."  (§ 450, subd. (f).)

knowing " 'the natural consequence could be setting the hill on fire.' " (*Ibid*.) On appeal, the minors argued there was insufficient evidence of malice for arson, but the California Supreme Court disagreed. (*Id*. at pp. 1026, 1029.)

In finding sufficient evidence the minors acted maliciously, the court explained: "The juvenile court . . . found that, despite their intentional acts, [the minors] did not intend to set the hillside on fire and tried to avoid such a consequence. Nevertheless, the court correctly recognized 'that's not the issue.' [The minors] were not required to know or be subjectively aware that the fire would be the probable consequence of their acts. [Citations.] A defendant may be guilty of arson if he or she acts with awareness of facts that would lead a reasonable person to realize that the direct, natural, and highly probable consequence of igniting and throwing a firecracker into dry brush would be the burning of the hillside. [Citation.] Here, [the minors] were aware of such facts. [¶] Although [the minors] did not intend to set the hillside on fire, they knew that their intentional acts created a fire hazard." (*V.V.*, *supra*, 51 Cal.4th at p. 1030.)

The minors argued their conduct amounted to no more than unlawfully causing a fire "because their conduct was reckless and resulted in an accidental fire." (*V.V.*, *supra*, 51 Cal.4th at p. 1031.) Our high court rejected this argument, concluding, "This was not an accidental or unintentional ignition." (*Id*. at p. 1032.) This was the court's conclusion even though the minors did not intend to start the fire, and they aimed the firecracker " 'into a patch of green or into a cement area' " " 'to avoid setting the hill on fire.' " (*Id*. at p. 1025.)

Justice Kennard and Justice Werdegar wrote dissenting opinions. Justice Kennard disagreed with the majority's assertion that the fire was not accidental. (*V.V.*, *supra*, 51 Cal.4th at p. 1033 (dis. opn. of Kennard, J.).) She

wrote: "[The minors] performed three intentional acts which, in combination, resulted in the hillside being set ablaze: (1) they lit a match; (2) they used the match to light the fuse to a cherry bomb; and (3) they flung the cherry bomb down the hillside just before it exploded.  The first and second of these acts were innocuous and entirely proper, assuming it was legally permissible to use fireworks in the area where they were standing (an assumption unrebutted by the record in this case); the third act was criminally reckless.  But by committing the third act, [the minors] did not deliberately set a fire.  Although a fire resulted from that act, that fire was an accident: As [one of the minors] told the police officer that questioned him, they set off the cherry bomb '[j]ust to make a lot of noise.'  They therefore did not act maliciously." (*Id*. at p. 1034.)

Justice Werdegar also found no evidence the minors acted maliciously. (*V.V.*, *supra*, 51 Cal.4th at p. 1035 (dis. opn. of Werdegar, J.).)  She reasoned: "Certainly the minors lit the firecracker 'willfully' ([§ 451]); the act was clearly volitional.  But nothing in the record justifies the majority's conclusion the minors also lit the firecracker 'maliciously.'  (*Ibid*.)  No evidence was introduced to show the minors had 'a wish to vex, defraud, annoy, or injure another person, or an intent to do a *wrongful* act. . . .'  (§ 450, subd. (e), italics added.)  The only evidence concerning the minors' purpose in lighting fireworks comes from their statements to police and reflects nothing more than a common youthful enthusiasm for loud noises.  Had the minors lit fireworks in violation of an ordinance prohibiting them, their conduct would certainly have been 'wrongful,' and thus malicious (§ 450, subd. (e)), but the People do not claim the minors violated any such ordinance."  (*Ibid*., fn. omitted.)  Justice Werdegar disagreed "with the majority that malice may be presumed simply from the doing of a volitional act that is not inherently or

11

necessarily 'wrongful' (§ 450, subd. (e)) or done with 'a wish to vex, defraud, annoy, or injure another person . . . .' (*ibid*.)." (*Id*. at p. 1038.)

Addressing Justice Werdegar's dissent, the majority in *V.V.* wrote: "Justice Werdegar's dissent repeatedly asserts that the majority presumes malice simply from the commission of the volitional act that causes a fire to start. [Citation.] In making these assertions, the dissent never recognizes that, in upholding the juvenile court's malice finding, we have applied the standard of malice, as stated in *Atkins*. [Citation.] There, we stated '[T]here must be a general intent to willfully commit the act of setting on fire *under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property*.' (*Atkins, supra*, 25 Cal.4th at p. 89, italics added.) The unitalicized language describes arson's willful requirement, or as the dissent characterizes it, the 'volitional act' requirement [citation], i.e., that the act of setting fire to, of burning, or that causes to be burned (§ 451) is intentional. The italicized language describes arson's malice requirement, i.e., that the willful and intentional act is committed under circumstances that create an obvious fire hazard. Thus, a willful act that causes a fire without further evidence of the underlying circumstances would be insufficient to establish malice." (*V.V., supra*, 51 Cal.4th at p. 1031, fn. 6.)

B.     *Sufficiency of the Prosecution's Evidence*

At the close of the prosecution's evidence, defense counsel moved for acquittal as to count 2 pursuant to section 1118.1,[7] arguing the prosecution

---

[7] "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading

presented no evidence of an intentional and wrongful setting of a fire. The prosecutor responded, "The defendant doesn't need to intend to burn the house, he just needs to intend to do the wrongful act that caused the fire." She argued the evidence showed defendant had the intent to manufacture butane honey oil, and that crime was the wrongful act that caused the fire. The trial court denied defendant's section 1118.1 motion for acquittal of the arson count.

Defendant contends the trial court erred in denying his motion for acquittal.

### 1. Standard of Review

"In ruling on a motion for judgment of acquittal pursuant to section 1118.1, a trial court applies the same standard an appellate court applies in reviewing the sufficiency of the evidence to support a conviction, that is, ' "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." [Citations.]' [Citation.] 'Where the section 1118.1 motion is made at the close of the prosecution's case-in-chief, the sufficiency of the evidence is tested as it stood at that point.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1212–1213.)

We independently review a trial court's ruling on a section 1118.1 motion. (*People v. Cole*, *supra*, 33 Cal.4th at p. 1213.) We " 'review the whole record in the light most favorable to the judgment below to determine whether it discloses *substantial evidence*—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact

---

if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." (§ 1118.1.)

13

could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cuevas* (1995) 12 Cal.4th 252, 260.)

    2.    <u>Analysis</u>

There is no dispute on appeal that defendant manufactured concentrated cannabis, a felony offense. The jury found him guilty of manufacturing concentrated cannabis on or about July 28, 2018, and defendant does not challenge this conviction.

Defendant also does not dispute on appeal that his commission of this offense in the circumstances shown—using an open blast process that allowed butane gas to settle in the presence of lit candles—caused the fire in his house. He concedes in his opening brief, "Accepting the prosecution's evidence and inferences from it in the light most favorable to the verdict, at most, [his] conduct was a reckless accident or unintentional conduct analogous to 'recklessly light[ing] a match near highly combustible materials.' (*Atkins*, *supra*, 25 Cal.4th at p. 89.)" In other words, defendant acknowledges the prosecution presented sufficient evidence to support a finding his conduct of manufacturing butane honey oil near lit candles unlawfully caused his house to be burned in violation of section 452.

Defendant argues, however, that there was no evidence he caused the fire willfully or maliciously. We disagree.

    a.    *"Willfully"*

As the *Atkins* court explained, willfulness for arson "requires only an intent to do the act that causes the harm." (*Atkins*, *supra*, 25 Cal.4th at p. 86; see also *Mason v. Superior Court* (2015) 242 Cal.App.4th 773, 778 [*Atkins* "construed 'caus[ing] to be burned' as 'the act that causes' a structure to burn].) Here, the act that caused the harm was operating an illegal open

14

blast butane honey oil lab near lit candles, and defendant engaged in this act intentionally.[8]  This meets the requirement of willfulness.

For his position, defendant argues, "Although no specific intent to burn the relevant structure or property is required for arson, the 'act' that a defendant has the purpose or willingness to commit must be an intentional firing or ignition."  But section 451 does not require an act of "intentional firing or ignition."[9]  It requires the person "sets fire to or burns or *causes to be burned* . . . any structure, forest land, or property."  (§ 451, subd. (a), italics added.)  The acts of "set[ting] fire to," "burn[ing]," or "caus[ing] to be burned" are the *same acts* that constitute unlawful causing a fire in violation of section 452 when done recklessly rather than intentionally and maliciously, and defendant concedes the prosecution presented substantial evidence he recklessly caused the fire.

Defendant relies on our high court's statements that refer to "setting" a fire to suggest an act of intentional ignition is required for arson.  In *Atkins*, the court observed, "[T]he *setting of the fire* must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire; ' "in short, a fire of incendiary origin." ' "  (*Atkins*,

---

[8] As we have mentioned, willfulness implies only " ' " 'that the person knows what he is doing, intends to do what he is doing and is a free agent.' " ' "  (*Atkins*, *supra*, 25 Cal.4th at p. 85.)  Here, the jury must have found defendant knew he was making butane honey oil with the PVC pipe, marijuana, and butane found in his room, or it would not have found him guilty of manufacturing a controlled substance.

[9] Defendant's position echoes Justice Kennard's dissent in *V.V.*  She argued that, where the minors did not intend to burn the hillside, their conduct of lighting and throwing a firecracker at the hillside did *not* amount to "deliberately set[ting] a fire" and therefore could not be arson.  (*V.V.*, *supra*, 51 Cal.4th at p. 1034 (dis. opn. of Kennard, J.).)  But Justice Kennard's view did not prevail.

*supra*, 25 Cal.4th at p. 88, italics added.) In *V.V.*, the court stated, " '[T]here must be a general intent to willfully commit the *act of setting on fire* under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.' " (*V.V.*, *supra*, 51 Cal.4th at p. 1029, italics added.) But these quoted statements that defendant relies on were made by the court in discussing the malice requirement for arson, not what acts are required for arson. In this context, we understand the Supreme Court's references to "setting of the fire" and "setting on fire" as shorthand for the three acts of "sets fire to or burns or causes to be burned" specified in section 451, subdivision (a). (See *V.V.*, *supra*, 51 Cal.4th at p. 1031, fn. 6 [explaining "arson's willful requirement" is met when "*the act* of setting fire to, of burning, or *that causes to be burned* (§ 451) *is intentional*," italics added].) We do not believe the court intended to import an additional willfulness requirement of "intentional ignition."

        b.    *"Maliciously"*

Next, defendant argues that no evidence was presented that the burning of his house was a direct, natural, and highly probable result of manufacturing butane honey oil. However, we reject the premise that malice under the prosecution's theory in this case required a showing of " 'a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.' " (*V.V.*, *supra*, 51 Cal.4th at p. 1029.)

Malice in law is "an intent to do a wrongful act, established either by proof or presumption of law." (§ 450(e)) Manufacturing concentrated cannabis—a felony offense (Health & Saf. Code, § 11379.6, subd. (a))—is wrongful and, consequently, defendant's intentional manufacture of

16

concentrated cannabis shows "intent to do a wrongful act" and establishes he acted maliciously.

Justice Werdegar's dissent in *V.V.* sheds light on what ordinarily constitutes a "wrongful act" for malice in law. She found no substantial evidence the minors acted maliciously because there was no evidence showing "the minors had 'a wish to vex, defraud, annoy, or injure another person, or an intent to do a *wrongful* act. . . .' " (*V.V.*, *supra*, 51 Cal.4th at p. 1035 (dis. opn. of Werdegar, J.) But she observed, "Had the minors lit fireworks in violation of an ordinance prohibiting them, their conduct would certainly have been 'wrongful,' and thus malicious (§ 450, subd. (e))." (*Ibid.*) With this observation, Justice Werdegar recognized that a violation of the law, in itself, is "wrongful" for purposes of the malice determination.

*People v. Kurtenbach*, *supra*, 204 Cal.App.4th 1264 is also instructive. In that case, the defendant solicited his employee to burn down the defendant's house (a rental property), the employee did so and died in the fire, and a neighboring house sustained over $100,000 in damage. (*Id.* at p. 1271.) The defendant was convicted of arson of his own house and vandalism of the neighbor's house. (*Id.* at pp. 1271–1272.) The defendant argued the prosecution failed to prove the malice required for vandalism because there was no evidence he intended to harm the neighbor's house. (*Id.* at p. 1281.) The Court of Appeal rejected this argument because malice in law was shown by the defendant's commission of the arson of his own house, a wrongful act. (*Id.* at p. 1282.)

The *Kurtenbach* court, citing *V.V.*, reasoned: "[A] person acts maliciously either when acting with 'a wish to vex, annoy, or injure another person' or with the 'intent to do a wrongful act.' (§ 7, item 4.) As our Supreme Court has explained, the first type of malice described in section 7,

17

item 4, is known as '[m]alice in fact' and 'consists of actual ill will or intent to injure.' (*In re V.V.*[*, supra,*] 51 Cal.4th [at p.] 1028.) However, the second type of malice described in section 7, item 4, is known as 'malice in law.' (*In re V.V.*, at p. 1028.) 'Malice in law may be "presumed" or "implied" from the intentional doing of the act without justification or excuse or mitigating circumstances.' (*Ibid.*)" (*Kurtenbach, supra*, 204 Cal.App.4th at p. 1282.)

"Because of the theory of *malice in law*, the jury could find that [the defendant] acted maliciously based on his commission of *any wrongful act* that caused damage to the neighbors' house. In this case, [the defendant]'s wrongful act was his participation in the arson of his house. That wrongful act collaterally damaged the neighbors' house, satisfying the definition of vandalism." (*Kurtenbach, supra*, 204 Cal.App.4th at p. 1282.)

Likewise, the jury in this case could find defendant acted maliciously based on his commission of the wrongful act of manufacturing butane honey oil, which caused his house to burn. This satisfies the malice requirement for arson.

To summarize, an intentional act that causes a fire is arson when malice is shown, and that malice may be malice in fact (an intent to injure, annoy, or defraud) or malice in law. Malice in law is "an intent to do a wrongful act" (§ 450(e)), and the "wrongful act" requirement may be satisfied by an act that is *either* inherently wrongful because it violates the law (*V.V.*, *supra*, 51 Cal.4th at p. 1035 (dis. opn. of Werdegar, J.)) *or* wrongful because it is done under circumstances that create " 'an obvious fire hazard . . . [and is] done without justification' " (*id*. at p. 1028).

Moreover, even if not every violation of law automatically qualifies as "wrongful" under section 450(e), we conclude defendant's particular crime of manufacturing concentrated cannabis in violation of Health and Safety Code,

18

section 11379.6, subdivision (a), is "wrongful" for purposes of the malice requirement for arson. This is because the statute he violated was enacted to address "the use of chemicals in the production of controlled substances because of *the dangers posed to the public from the use of hazardous substances, such as fires*, fumes or *explosions*." (*People v. Bergen* (2008) 166 Cal.App.4th 161, 170, 173, italics added [holding the use of butane to produce concentrated cannabis violates Health and Safety Code section 11379.6, subdivision (a), and noting the defendant's activities of chemically processing cannabis "in a lab located in a house situated in a residential community" "posed a risk of fire to the residence and to the public at large"].) Thus, defendant's violation of Health and Safety Code section 11379.6, subdivision (a), caused the very harm the law was intended to protect against. Under these circumstances, we believe defendant's conduct was "wrongful" under section 450(e).

C.   *Claims of Instructional Error*

1.   <u>Arson Instruction</u>

The pattern jury instruction on arson of an inhabited structure or property, CALCRIM No. 1502, describes both malice in law and malice in fact, providing, "Someone acts *maliciously* when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to defraud, annoy, or injure someone else." (CALCRIM No. 1502.)

In a discussion on jury instructions with counsel, the trial court explained it was modifying CALCRIM No. 1502 to conform to the evidence presented at trial. The trial court stated it "deleted [the reference to intent to defraud, annoy, or injure (i.e., malice in fact)] because there's simply no evidence that would support anything of that kind here." And the court stated it "specified . . . the malicious act alleged here is manufacturing

19

cannabis—concentrated cannabis." The court explained, "My reason for that is because I don't want the jury going too far afield with something else that they might think is wrongful by allowing the butane on the floor where there's a candle." The court also added the statement, "It is not required that he intend to cause a fire." Defense counsel made no objection.

The jury was instructed on count 2 in relevant part as follows: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant set fire to, or burned, or caused the burning of a structure; [¶] 2. He acted willfully and maliciously; [¶] AND [¶] 3. The fire burned an inhabited structure or inhabited property.

"To *set fire to or burn* means to damage or destroy with fire, either all or part of something, no matter how small the part. [¶] Someone commits an act *willfully* when he or she does it willingly or on purpose.

"Someone acts *maliciously* when he or she intentionally does a wrongful act. It is not required that he intend to cause a fire. The wrongful act charged here is the unlawful manufacture of concentrated cannabis."[10]

Defendant contends the instruction given misstated the law in various ways. His claims of instructional error fail for the same reasons his substantial evidence claim fails.

First, he argues it was a misstatement to instruct the jury, "It is not required that he intend to cause a fire." But arson "does not require the intent to cause the resulting harm, . . . 'rather [it] requires only [a general] intent to do the act that causes the harm.'" (*V.V., supra,* 51 Cal.4th at p. 1027, quoting *Atkins, supra,* 25 Cal.4th at p. 86.) Thus, intent to cause a fire is not an element of the offense.

---

[10] The jury was also given CALCRIM No. 1531 on unlawfully causing a fire, a lesser included offense.

Second, defendant asserts the statement that the wrongful act alleged in this case was the manufacture of concentrated cannabis was incorrect because "this modification meant that a finding that the butane honey oil allegation was true meant that [defendant] necessarily acted maliciously with regard to the arson count" "with no inquiry into whether he had the required 'general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.' " But we have concluded that manufacturing concentrated cannabis in violation of Health and Safety Code section 11379.6, subdivision (a), is a wrongful act and, therefore, a finding that defendant intended to manufacture concentrated cannabis provides the requisite malice in law for arson.[11] As we have noted, defendant does not challenge anything about the jury's verdict that he was guilty beyond a reasonable doubt of manufacturing concentrated cannabis, as evidenced by his conviction of that crime in count 1—not the instructions, the sufficiency of the evidence, or the verdict form.[12]

---

[11] For the same reason, we reject defendant's claim that the pattern jury instruction for arson omitted necessary elements of arson under the facts of the case because it "required neither a finding of a 'general intent to willfully commit the act of setting on fire' nor that 'the act of setting on fire [be] under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.' (*Atkins*, *supra*, 25 Cal.4th 76.)" The prosecution's theory was the malice requirement was met because defendant's act of manufacturing butane honey oil was a violation of law and therefore inherently wrongful. This is a valid theory of malice in law.

[12] Reading the instructions as a whole, there is no question that the court left it to the jury to determine whether defendant had in fact committed the "wrongful act" of manufacturing butane honey oil. The trial court instructed the jury with CALCRIM No. 200 that it was the jury's role to decide the facts ("You must decide what the facts are. It is up to all of you,

21

Third, defendant argues the instruction "removed from the jury's consideration the issue of whether the necessary actus reus occurred," which he asserts is the " 'act of setting on fire.' "  This argument fails because the jury was correctly instructed that the prosecution was required to prove that "defendant set fire to, or burned, or caused the burning of a structure."

2.    Request for Instruction on Accident

During the discussion on jury instructions, defense counsel requested CALCRIM No. 3404 on accident, and the trial court denied the request. Defendant claims this was error.

The jury instruction on accident is based on Penal Code section 26, which "states the statutory defense: 'All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . [¶] Five— Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence.' " (*People v. Anderson* (2011) 51 Cal.4th 989, 996 (*Anderson*).)

CALCRIM No. 3404 for general or specific intent crimes provides: "The defendant is not guilty of <*insert crime[s]*> if (he/she) acted [or failed to act]

_____

and you alone, to decide what happened, based only on the evidence that has been presented to you in this trial."  "Do not assume just because I give a particular instruction that I am suggesting anything about the facts.  After you have decided what the facts are, follow the instructions that do apply to the facts as you find them.")  The trial court instructed the jury with CALCRIM No. 2330 on the elements of the crime alleged in count 1, described as "manufacturing concentrated cannabis, a controlled substance." The next jury instruction was the modified CALCRIM No. 1502, as we have described above, on count 2, arson.  And the jury was instructed with CALCRIM No. 3515 that "[e]ach of the counts charged in this case is a separate crime.  You must consider each count separately and return a separate verdict for each one."

without the intent required for that crime, but acted instead accidentally. You may not find the defendant guilty of *<insert crime[s]>* unless you are convinced beyond a reasonable doubt that (he/she) acted with the required intent."

Defendant argues the trial court erred in refusing the instruction because it is correct and supported by substantial evidence. (See *People v. Wilkins* (2013) 56 Cal.4th 333, 347 ["When a legally correct instruction is requested, . . . it should be given 'if it is supported by substantial evidence, that is, evidence sufficient to deserve jury consideration' "].)

We disagree that substantial evidence was presented supporting an accident instruction. A defense of "accident" as the term is used in section 26 " ' "amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime." ' " (*Anderson*, *supra*, 51 Cal.4th at p. 997.) The mental state required for arson in this case was that defendant intended to manufacture butane honey oil, a wrongful act that caused the fire. Defendant does not claim he unintentionally manufactured butane honey oil. He claims only that he did not intend to start a fire. But lack of intention to start a fire does not negate the mental state necessary to make his actions a crime.

3.    Response to Jury Question

Unpublished Text Follows

During deliberations, the jury sent a note that read: "Clarification as to Count 2  [¶] The definition is clearly referencing the manufacture of concentrated cann[a]bis  [¶] With the definition of 'willful' is that in reference to arson or to the manufacture of concentrated cann[a]bis?"

Outside the presence of the jury, the trial court proposed telling the jury that, regarding the willfulness requirement, "it is an act that is done or

23

not done willingly, or on purpose in this case" and "the definition of willfully does not require that the defendant willingly or intentionally caused a fire. What's required is that the defendant engaged in a wrongful act, in this case, the manufacturing of concentrated cannabis, and that the result of that was to cause the burning of a structure." The court also indicated it would describe the facts of *V.V.* as an example. Defense counsel said, "I think that works. It sounds to me that maybe there's some confusion between conjunctive and in the willful and malicious. I would also ask that the Court clarify that."

With the jury back in the courtroom, the court responded to the question orally as follows: "There are two separate and cumulative mental requirements to the crime of arson. It must be, both, willfully and maliciously.

"In the definition of maliciously, I specified that it is not required that Mr. Royal intended to cause a fire. He must intentionally do a wrongful act. The wrongful act charged is the unlawful manufacturing of concentrated cannabis. It must further be true, pursuant to requirement one of the elements, that that act caused the burning of a structure.

"Accordingly, willingly is defined as someone commits an act willfully. I said willingly. I meant willfully. Someone commits an act willfully when he or she does it willingly or on purpose, as opposed to unintentionally, or accidentally, or unconsciously, for example.

"It is not required that the defendant willfully caused a fire. It is required that the defendant willfully engaged in manufacture[] of concentrated cannabis, and that that, in turn, caused the fire.

"So, to give you an example from some of the case law that I was debating with the attorneys in framing these instructions, there was a case

24

where someone was convicted of arson because he threw a Cherry bomb into some dry brush. There was no suggestion in doing so he intended to cause a brush fire. Nevertheless, he did intend to throw the lit cherry bomb that, in turn, caused the fire.

"This isn't in the written instructions, but the case law further says that in doing something like that, one must—the causing of the fire must have been the natural and foreseeable consequence of the action. [¶] And, in fact, does either of you have that exact language handy? I can—"

At this point, defense counsel said, "It's direct, natural, and probable."

The court continued: "Direct, natural, probable consequence. So, if you do something that, as a complete unforeseeable fluke causes a fire, that's not arson.

"It must be the case that he intentionally, willingly, engaged in the manufacture[] of concentrated cannabis, and that the causing of the fire was then the direct, natural, and probable consequences of that act.

"Now, in doing this, I am in effect going with your—the jury's own factual assumptions here. I'm not telling you that the—that the defendant did or did not, for example, engage in manufacturing of concentrated cannabis. Let alone, that he did so willingly. Those are fact questions for you to determine. And I don't want you to read into the wording of the answer I'm now giving you that I'm somehow telling you anything about the facts. Again, the facts are all for you to decide.

"I hope this is helpful to you. Unless you have follow-up questions, I'll ask you to return and resume your deliberations."

On appeal, defendant argues this response "watered down the standard" from "direct, natural, and *highly* probable" to simply "direct, natural, and probable consequences." (Italics added.) But, as we have

explained, the prosecution's theory of malice in law was that defendant's conduct was wrongful, and therefore malicious, because it was a violation of Health and Safety Code section 11379.6, subdivision (a). Under this theory, it was *not* necessary to show, in addition, that defendant acted with "a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property" (*V.V.*, *supra*, 51 Cal.4th at p. 1029). Under this circumstance, the trial court's response, which added an unnecessary requirement that the willful act was a fire hazard, could not have prejudiced defendant.

<u>End of Unpublished Text</u>

## DISPOSITION

The judgment is affirmed.

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Desautels, J.


A166139, *People v. Royal*

27

Trial Court:  Superior Court of Contra Costa County


Trial Judge:  Hon. Charles S. Treat


Christopher Stansell, under appointment by the Court of Appeal, for Defendant and Appellant


Rob Bonta, Attorney General; Lance E. Winters, Chief Assistant Attorney General; Jeffrey M. Laurence, Assistant Attorney General; Catherine A. Rivlin and Jamie Michele Weyland, Deputy Attorneys General, for Plaintiff and Respondent


A166139, *People v. Royal*